UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOHN D. WESTLEY,                                    CIVIL NO. 11-3704 (JNE/JSM)

         Plaintiff,

v.                                                 **REPORT AND RECOMMENDATION**

JAMES ROBERT MANN, et al.,

         Defendants.


The above matter came on before the undersigned upon Defendant Michael

Tilson Thomas's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P.

12(b)(2) [Docket No. 6]; Defendant Victoria Sigler's Motion to Dismiss [Docket No, 11];

Defendant City of Miami Beach and Max Sklar's Motion to Dismiss Plaintiff's Complaint

Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 21]; and Defendants Steven P. Kalka

and Silver Hill Financial, LLC's Motion to Dismiss Plaintiff's Complaint and/or for

Summary Judgment [Docket No. 60].

Plaintiff John D. Westley appeared pro se.  Lowell J. Noteboom, Esq. and

Andrew W. Davis, Esq. appeared for defendants City of Miami Beach, Max Sklar and

Michael Tilson Thomas; John S. Garry, Esq. and Mark S. Dunn, Esq. appeared on

behalf of defendant Victoria Sigler; and Kelly S. Hadac, Esq. appeared on behalf of

defendants Steven P. Kalka and Silver Hill Financial.

These motions have been referred to the undersigned Magistrate Judge for a

Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A),

(B) and Local Rule 72.1(c).

## I.   BACKGROUND

Plaintiff John D. Westley has brought an action against James Robert Mann, Mitchell P. Korus, Steven P. Kalka, Max Sklar, Wayne M. Pathman, Dylan Pukel, Judge Victoria Sigler, Jennifer Viciedo Ruiz, Michael Thomas Tilson,[1] Silver Hill Financial, and the City of City of Miami Beach.[2]  According to the Complaint, all of these defendants reside in Florida.  See Complaint [Docket No. 1], pp. 1-3.  Westley asserted that the basis for venue in the District of Minnesota was that he permanently resides in Minnesota; the facts alleged in the Complaint "primarily occurred thru Federal Wire transfers and United States Postal Service Money Orders originating in the jurisdiction of the Federal District Court of Minnesota;" Westley has been barred from pursuing

---

[1]    While this is the name listed in the Complaint, this Court notes that the correct name for defendant is Michael Tilson Thomas.  See Declaration of Defendant Michael Tilson Thomas ("Thomas Decl.") [Docket No. 9], ¶ 1.

[2]    None of defendants' roles in this dispute are described by plaintiff in his Complaint.  Nevertheless, as to the parties involved in the motions described in this decision, this Court has learned that the City of Miami Beach is a municipality located in Miami-Dade County, State of Florida.  See Unsworn Declaration of Richard Lorber Pursuant to 28 U.S.C. § 1746 [Docket No. 24] ("Lorber Decl."), ¶ 3.  Defendant Sklar was at all times material to the Complaint, the Tourism & Cultural Development Director for the City of Miami Beach.  See Unsworn Declaration of Max Sklar Pursuant to 28 U.S.C. § 1746 [Docket No. 25] ("Sklar Decl."), ¶ 2.  Defendant Thomas is the Music Director of the San Francisco Symphony, located in San Francisco, California, as well as the Founder and Artistic Director of the New World Symphony, America's Orchestral Academy, in Miami Beach, Florida.  See Thomas Decl., ¶ 1.  Defendant Sigler is a judge for the Circuit Court of the Eleventh Circuit Court in and for Miami-Dade County, Florida.  See Unsworn Declaration of Defendant Victoria Sigler Pursuant to 28 U.S.C. § 1746 ("Sigler Decl.") [Docket No. 34], ¶ 1.  Defendant Silver Hill Financial and Westley entered into an agreement in which Westley guaranteed a loan given by Silver Hill Financial to All for the Earth Foundation ("AFTEF") to purchase the property at issue in this case.  See Affidavit of Bryan Dempsey [Docket No. 63] ("Dempsey Aff."), Exs. 1 (Mortgage), 2 (Guaranty).  Kalka was the seller's agent for the property at issue in this case, Bayview Lincoln Road, LLC, and the negotiating agent for Silver Hill Financial.  See Unsworn Declaration of Plaintiff Pursuant to 28 U.S.C. § 1746 [Docket No. 78] ("Westley's Kalka/Silver Hill Decl."), ¶¶ 2, 4.

legal claims in Florida courts; "Defendants and their related agents are attempting to collect a fraudulently obtained judgment against Plaintiff's personal property located in Minnesota;" he was "unlawfully detained by Florida law authorities under the direction of Florida courts due to local public corruption, bias and prejudice designed to prevent public equal protection access sought in Florida civil courts for relief and restitution;" and "the records for the facts alleged in Complaint are stored and filed in Minnesota and kept by the State of Minnesota." Id., p. 4.

The gravamen of Westley's complaint is that he guaranteed a loan by Silver Hill Financial to AFTEF for the purchase of property located in Miami Beach, Florida that had been bought by AFTEF[3] from Bayview Lincoln Road LLC,[4] and for which Silver Hill Financial took a mortgage to secure the loan. Since the purchase of the property, Westley claims that AFTEF and he have been deprived of their use of the property through the acts of all of the defendants. The particulars of the dispute, as set forth in his Complaint, are as follows:

From November 2007 through January 2008, defendants Mann, Korus,[5] Kalka and Silver Hill Financial, via emails, mailings and telephone phone calls to Westley in Minnesota, conspired to fraudulently induce Westley to personally guarantee AFTEF's

---

[3]     AFTEF is an organization for which Westley serves as their executive director. Unsworn Declaration of Plaintiff Pursuant to 28 U.S.C. Section 1746 [Docket No. 41], ¶ 1. AFTEF is not a party to this suit.

[4]     Bayview Lincoln Road LLC is not a party in this case.

[5]     The role of Mann and Korus are not described in the Complaint. From the exhibits submitted by Brian Demsey in connection with the motion to dismiss or for summary judgment by Kalka and Silver Hill Financial, Mann witnessed the Mortgage documents signed by Westley on behalf of AFTEF and the guaranty executed by Westley. See Dempsey Aff., Exs. 1 (Mortgage), 2 (Guaranty). Westley is seeking a default judgment against both Mann and Korus. See Docket Nos. 92, 93.

purchase of property and related deed rights for Condominium Units 270 and 800 of 605 Lincoln Road, Miami Beach, Florida ("the Property") from Bayview Lincoln Road, LLC by Special Warranty Deed dated January 10, 2009, which was recorded in Miami-Dade County Florida.  Complaint, ¶ 7.  The property was not marketable, usable or accessible in violation of "FILA,[6] FERA, OSHA, ADA and UBC regulations."  Id.  Westley had a legal and equitable interest in the Property and was damaged by the negligent acts, breaches of contract, neglect of fiduciary responsibilities, fraudulent misrepresentations and misleading acts of defendants Mann, Korus, Kalka and Silver Hill Financial in violation of federal law and regulations, who were unjustly enriched in violation of "TILA, FERA, RICO & UCC laws and Federal Mail & Wire Fraud regulations."  Id.

Further, defendants Mann, Korus, Kalka and Silver Hill Financial and their representative agents required Westley and AFTEF to obtain acceptable long term tenants for the Property, and incorporated the long term rental agreement into the mortgage terms and loan closing documents provided to Westley for the Property.  Id., ¶ 8.  Prior to entering into the lease, defendants Mann, Korus, Kalka and Silver Hill Financial and their representative agents made negligent, false and misleading representations to Westley and the tenants regarding the Property and use of the Property to induce Westley and other tenants into signing the long term rental agreement with AFTEF, including representations that the premises had the required Certificate of Occupancy, property access or a Certificate of Use, and was rented and occupied by Sony Music Disco, Inc., pursuant to a recorded lease and the Declarations

---

[6]     The Court assumes that "FILA" is a typographical error and that Westley meant to reference "TILA."  To the best of the Court's knowledge there is no federal FILA statute.

4

of Condominium.  Id.  In fact, Mann, Korus, Kalka and Silver Hill Financial and their representative agents never obtained the required Certificate of Occupancy, property access or a Certificate of Use in violation of "Federal Uniform Building Codes, OSHA commercial property regulation standards, ADA, TILA and FERA federal laws."  Id.

From November 2007 through January 2008, defendants Mann, Korus, Kalka and Silver Hill Financial unjustly enriched themselves in violation of "TILA, FERA, RICO and UCC" and harmed Westley through fraudulent and misleading emails and mailings to Westley in Minnesota that provided tax records, documents and information regarding $117,000 in property fee payments for City of Miami Beach Concurrency Fees made to Senior Planner Henry Johnson in order to obtain Westley's personal guarantee.  Id., ¶ 9.  After the purchase of the Property, defendants Sklar and the City of Miami Beach informed Westley that the payments were not received and Johnson was subsequently convicted of embezzlement and solicitation of bribes as a public official.  Id.  Mann, Korus, Kalka, Sklar, the City of Miami Beach and Silver Hill Financial negligently violated contractual, fiduciary and administrative duties causing financial harm and damage to Westley.  Id.

At the closing of the purchase of the Property, Westley was fraudulently induced by defendants Mann, Korus, Kalka and Silver Hill Financial to personally wire $10,000 from his Wells Fargo account in St. Paul, Minnesota to defendant Silver Hill Financial for property tax escrows, title insurance coverage, legal costs, condominium assessments, closing expenses and real estate agent fees.  Id., ¶ 10.  These actions violated "TILA, FERA, RICO and Federal UCC wire and mail fraud regulations."  Id.

In February and March 2008, defendants City of Miami Beach, Sklar, and representative agents realized that Westley and the tenants of the Property were doing

business with African Americans, Haitians and Muslims on the premises and informed Westley that the Property could not be accessed and used because the $117,000 payment, described above, had not been paid to the City of Miami Beach.  Id., ¶ 11. Defendants Mann, Korus, Kalka, Sklar and the City of Miami Beach conspired for racially and religiously motivated reasons to deny Westley his First Amendment freedom of association rights to employ and conduct business on the Property with African Americans, Haitians and Muslims and thereby, violated "RICO, FILA, FERA, Federal Civil Right protections and UCC regulations." Id.

The Property, for which the loan was personally guaranteed by Westley, included access and use of the eighth floor and rooftop of the building and sidewalk frontage on the Property.  Id., ¶ 12.  However, these sites were unjustly taken away and leased by defendants Sklar and the City of Miami Beach and their representative agents to third parties in violation of the Fifth Amendment.  Id.  Defendants Mann, Korus, Kalka, Sklar and the City of Miami Beach retaliated against Westley for providing information and ongoing cooperation to Federal Department of Justice officials and FBI agents regarding Miami Beach public corruption and illegal acts by local banks, real estate interests and law firms.  Id.

From January 2008 through September 2010, defendants Thomas and Korus complained to defendants Sklar and the City of Miami Beach about Muslims, Haitians and African Americans accessing and using the Property.  Id., ¶ 13.  Defendants Sklar, City of Miami Beach, Thomas and their representative agents had joint business and financial arrangements in the adjoining City Center New World Symphony property.  Id. Due to racial prejudice and religious bigotry, defendants Sklar, Korus, City of Miami Beach, Thomas and their representative agents wanted to remove the Muslims,

Haitians and the African Americans from the Property as they were involved in Westley's special events and the tenants' broadcasting shows, and routinely worked on the premises, which directly competed with defendants Thomas, the City of Miami Beach and their representative agents for local events and venue bookings.  Id.  Due to racial bigotry and religious prejudice, defendants Sklar, the City of Miami Beach, Thomas and their representative agents believed and claimed that Westley's minority, African American, Haitian, and Muslim business associates devalued the surrounding City Center and New World Symphony property.  Id.

Beginning in February 2008, Westley corresponded with defendants Mann, Korus, Kalka, Silver Hill Financial, Sklar and the City of Miami Beach requesting that the ADA access, life, safety and fire protection deficiencies for the Property be immediately brought into compliance with all federal OSHA standards, ADA access laws, Uniform Building Codes, and fire, life and safety regulations.  Id., ¶ 14.  These defendants were non-responsive to this correspondence "in violation of TILA, FERA, OSHA, ADA and UCC regulations and contractual, fiduciary and administrative professional obligations."  Id.  Mann informed Westley that he and defendant Korus were protected from local liability of the enforcement of federal laws and regulations because they were having sexual relations with Miami Dade County judges, court officers and government officials.  Id.  Korus further claimed to have special class protections against the enforcement of federal laws and regulations based on the protection provided by a local banking real estate syndicate and the co-campaign manager of the City of Miami Beach Mayor, Matti Bower.  Id.  In addition, defendants Mann, Korus, Kalka, Silver Hill Financial, Sklar and the City of Miami Beach refused to comply with the regulations to further prevent property access and association with Westley's African American, Haitian and Muslim

7

business associates, thereby tortuously interfering with Westley's business interests and unjustly enriching themselves in violation of "Federal Civil Rights protections, TILA, FERA, OSHA, RICO, UCC and Federal Mail Wire fraud regulations." Id.

From May 2008 through September 2010, Westley and his related business interests made several workplace safety inquiries and life, safety and public health complaints. Id., ¶ 15. From July through September 2008, AFTEF and Westley paid defendants Pukel[7] and Pathman[8] retainers through interstate commerce transactions and United States Postal Service mailings, in order to cure the federal UBC, OSHA and ADA deficiencies in the Property and to obtain acknowledgement of the $117,000 payment to City of Miami Senior Planner Johnson. Id. Defendants Pathman, Pukel, Sklar and the City of Miami Beach then conspired to obstruct ongoing federal law enforcement investigations by discouraging and preventing Westley and his related business interests from cooperating with DOJ officials and FBI agents, and conspired to extort additional fees and further unjust enrichment payments from Westley and AFTEF. Id.

In October 2008, Westley and AFTEF, through defendant Pukel, commenced a legal action in Miami Dade Circuit Court before defendant Sigler to obtain compliance with federal OSHA workplace laws, ADA access requirements, fire, life and safety codes and public health regulations. Id., ¶ 16. Defendants Sigler, Sklar, Pathman and the City of Miami Beach caused Westley monetary harm by conspiring to: (1) intimidate

---

[7]    Westley has seeking the entry of a default judgment against Pukel. See Docket No. 100. Apparently, Pukel is a lawyer.

[8]    Pathman is a lawyer and partner of the Miami law firm, Pathman Lewis, LLP, which was retained by AFTEF to represent it in certain matters relating to the Property. See Affidavit of Wayne M. Pathman [Docket No. 87].

and harass Westley's legal representation; (2) deny him access to public courts; (3) willfully prevent access to places of employment due to racial bigotry and religious prejudices; (4) endanger the life, safety and welfare of Westley and African American, Haitian and Muslim associates; (5) cause the breach of contracts and fiduciary responsibilities; and (6) obstruct justice by discouraging further cooperation with federal authorities and ongoing criminal investigations.  Id.

On November 4, 2008, defendants Sklar and the City of Miami Beach ordered local police, acting as "organized muscle" on their behalf and on the behalf of defendants Korus, Mann, Kalka and Silver Hill Financial, to forcibly break up an assembly at the Property in which Westley was participating and shut down the live broadcasts from the Property exposing governmental corruption, real estate banking fraud and local racism.  Id., ¶ 17.  Westley was physically removed from the property. Id.  Based on these facts, defendants Sklar, City of Miami Beach, Mann, Korus, Pathman, and Sigler conspired to violate Westley's rights to freedom of speech, freedom of association and freedom of assembly, and their actions caused monetary damage to Westley.  Id.

From March 2008 through September 2010, to mitigate damages and in the interests of the public welfare and life safety, Westley, AFTEF, and tenants and were forced to contribute over $400,000, including the money and time required to comply with the Uniform Building Code, ADA access requirements, OSHA standards and Certificates of Occupancy and Certificates of Use.  Id., ¶ 18.  Once Westley complied with these standards, defendants Sklar, City of Miami Beach, Korus, Ruiz, and Thomas issued building permits to third parties that authorized and resulted in the destruction of the improvements, which resulted in the illegal seizure of private property without just

9

compensation in violation of his Fifth Amendment protections and in violation of "RICO statutes, ADA law and OSHA whistleblower protections." Id.

Defendants Korus, Ruiz[9] and their representative agents had armed guards placed on the Property preventing Westley from having access to the Property, forcing him to obtain a court order in June 2010, at a great expense to himself, in order to regain access. Id., ¶ 19. Defendants Pukel, Ruiz, Sklar, Sigler, the City of Miami Beach, and their agents then conspired to deny further access to civil courts by Westley and his related business interests, causing him financial damage. Id.

From January 2011 to the present, defendants Pukel, Ruiz, Sklar, Sigler, and the City of Miami Beach conspired to deny access to Westley, AFTEF and minority associates legal claims in local civil courts in order to obstruct justice and to cover up public corruption and their personal RICO liability exposure. Id., ¶ 20. Additionally, defendants Pukel, Ruiz, Sklar, Sigler, and the City of Miami Beach, and their representative agents, have repeatedly refused to return documents, records, plans and files requested from Westley by federal law enforcement authorities. Id. Further, defendants Ruiz, Sklar, Sigler, and the City of Miami Beach, and their representative agents, tortuously interfered in Westley's representation by attorney, George M. Tavares, by sabotaging Tavares's employment while in medical treatment. Id.

Due to defendants' illegal acts, Westley was displaced from his place of employment and denied access to the Property. This conduct violated "Civil Rights, OSHA, TILA, RICO, USERRA, and OSHA Federal law and regulation[s]." Id. Without access to the Property, weddings, broadcast shows and other fundraising events could not be held at the Property, resulting in monetary damages. Id., ¶ 21.

---

[9]      Ruiz has not entered an appearance in this case.

As the result of Defendants Mann, Korus, Kalka, Silver Hill Financial, Sklar and the City of Miami Beach's misrepresentations regarding the existence of certificates of occupancy and use for the premises; their negligence and endangerment preventing safe access and use of the Property; and all defendants' racial bias and religiously discriminatory acts, Westley and his related business interests suffered financial loss and damage to reputation.  Id., ¶ 22.  In addition, "[d]efendants' conspiracy and violations of Federal Civil Rights protections, OSHA, UBC fire[,] life [and] safety protections, ADA law, RICO statutes caused Plaintiff and related business interests financial loss and damage to reputations."  Id.

Finally, Westley claimed that his personal wire information, financial and banking records provided to defendants Mann, Korus, Kalka, and Silver Hill Financial, were used for identity theft, false reporting, and credit fraud in violation of Federal Credit Reporting Act ("FCRA") and Federal Wire Fraud statutes.  Id., ¶ 23.

Westley seeks monetary damages from all defendants.  Id., Request for Relief.

This case comes before the Court on motions to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure by defendants Thomas, Sigler, the City of Miami Beach, Sklar and Kalka for lack of personal jurisdiction; and by defendant Silver Hill Financial on its Rule 12(b)(6) motion to dismiss and its Rule 56 motion for summary judgment for failure to state a claim against it as a matter of law.

## II.    STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of jurisdiction over the person.  See Fed. R. Civ. P. 12(b)(2). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction.  See K-V Pharm. Co. v. J. Uriach & CIA,

S.A., 648 F.3d 588, 591 (8th Cir. 2011) (citation omitted); see also Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 560 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).  For the purposes of a prima facie showing, this Court must view the evidence in the light most favorable to the plaintiff.  See Pecoraro, 340 F.3d at 561 (citing Digi-Tel Holdings, Inc., 89 F.3d at 522). In considering a motion to dismiss pursuant to Rule 12(b)(2), a court may consider materials outside of the pleadings.  See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998); see also K-V Pharm. Co., 648 F.3d at 592 ("Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion.") (citation and internal quotation marks omitted).  "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction."  Epps v. Stewart Inform. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted).

To withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  Martin v. ReliaStar Life Ins. Co., Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877, at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555).  On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556). As the Supreme Court explained in Iqbal:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-50.

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "'[t]hough pro se complaints are to be construed liberally, see Estelle v.

<u>Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), they still must allege sufficient facts to support the claims advanced.'" <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004); <u>see</u> <u>also</u> <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "*pro se* complaint must contain specific facts supporting its conclusions.").

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

<u>Stone</u>, 364 F.3d at 915. Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." <u>Id.</u> (quoting <u>Dunn v. White</u>, 880 F.2d 1188, 1197 (10th Cir. 1989)).

Summary judgment under Rule 56 is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>see</u> <u>also</u> <u>Unigroup, Inc. v. O'Rourke Storage & Transfer Co.</u>, 980 F.2d 1217, 1219 (8th Cir. 1999). The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. <u>Celotex Corp.</u>, 477 U.S. at 322-23; <u>see</u> <u>also</u> <u>Mems v. City of St. Paul, Dep't of Fire & Safety Servs.</u>, 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256; <u>Krenik v. County of</u>

14

LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minn. Laborers Health & Welfare Fund v. Swenke, 2003 WL 21521755, at *1 (D. Minn. July 2, 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

Summary judgment is appropriate where the material facts are not in dispute, and the court need only apply the law to the facts in the record. See Eisenrich v. Minneapolis Retail Meat Cutters, 282 F. Supp. 1077, 1080-81 (D. Minn. 2003) (citing Oldham v. West, 47 F.3d 985, 988 (8th Cir. 1995)).

## III. ANALYSIS

### A. Personal Jurisdiction under Minnesota's Long-Arm Statute

In deciding whether personal jurisdiction exists in this suit, this Court must determine if the exercise of jurisdiction is appropriate under Minnesota's long-arm statute and whether the exercise of personal jurisdiction complies with the requirements of due process. See Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citation omitted). Minnesota's long-arm statute, in pertinent part, provides:

> a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

(1) owns, uses, or possesses any real or personal property situated in this state; or

(2) transacts any business within the state; or

(3) commits any act in Minnesota causing injury or property damage; or

(4) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(i) Minnesota has no substantial interest in providing a forum; or

(ii) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

Minn. Stat. § 543.19, Subd. 1.

However, "because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied." MGR, Inc. v. Resolution Graphic Resources, Inc., No. Civ. 03-3247 (DWF/SRN), 2003 WL 22161585, at *2 (D. Minn. Sep. 15, 2003) (citing Wessels, Arnold & Handerson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995)); see also St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 591 (8th Cir. 2001) (citing same); AGinformationData, LLC v. Integrated Solutions Grp., Inc., NO. CIV. 11-3673 (DWF/JSM), 2012 WL 1517237, at *2 (D. Minn. April 30, 2012) (citing same).   Due process requires that a defendant have the necessary "minimum contacts" with a forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).   Contacts with the forum state must be "more than random, fortuitous, or attenuated, such that summoning the

16

defendant would not offend traditional notions of fair play and substantial justice." Pecoraro, 340 F.3d at 561. "These 'contacts' are sufficient when 'the defendant's conduct and connection with the forum State are such that it should reasonably anticipate being hauled into court there,' and the 'reasonable anticipation' requirement is satisfied if the defendant has engaged in some act by which it purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Travel Tags, Inc. v. Digital Replay, Inc., No. Civ. 02-4276 (MJD/JGL), 2003 WL 22145272, at *3 (D. Minn. Sept. 15, 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985); World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)).  "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." Pecoraro, 340 F.3d at 562.

The Eighth Circuit has developed the following test for analyzing whether sufficient minimum contacts exist for personal jurisdiction:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

K-V Pharm. Co., 648 F.3d at 592 (quoting Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010)).  While the first three factors are of primary importance, and the last two factors are secondary, courts must look at look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists.  Id. at 592-93; see also Minn. Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995) (citations omitted).

The third factor differentiates between specific and general jurisdiction.  See Digi-Tel, 89 F.3d at 523 n.4; see also Wells Dairy, Inc. v. Food Movers Intern., Inc., 607 F.3d 515, 518 (8th Cir. 2010) ("Personal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor-relation of the cause of action to the contacts-distinguishes between the two.") (citation omitted).

Specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities."  Johnson, 614 F.3d at 795 (citing Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)); see also Epps, 327 F.3d at 648 (citations omitted) ("When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction.").   Conversely, "[g]eneral jurisdiction exists where the contacts between the defendant and the forum state are continuous and systematic even if there is no relationship between the contacts and the cause of action."  Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2008) (quotation omitted); see also Johnson, 614 F.3d at 794 (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004)) ("A court obtains general jurisdiction 'against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.'").

The Court now applies these principles to the motions to dismiss for lack of personal jurisdiction by defendants Thomas, Sigler, the City of Miami Beach, Sklar and Kalka.

**B.** <u>Defendant Michael Tilson Thomas's Motion to Dismiss</u>

Defendant Thomas is the Music Director of the San Francisco Symphony, located in San Francisco, California, as well as the Founder and Artistic Director of the New World Symphony, America's Orchestral Academy, in Miami Beach, Florida. <u>See</u> Thomas Decl., ¶¶ 1, 2. Thomas is a permanent resident of and domiciled in the State of Florida. <u>Id.</u>, ¶ 3. Thomas attested that he had never heard of Westley until learning of the Complaint, had not visited Minnesota in approximately twenty years, and had no contact with Minnesota at the time of the alleged conduct described in this lawsuit, or at the time this lawsuit was filed in late December 2011. <u>Id.</u>, ¶¶ 4, 5.

On these facts, Thomas argued that no general jurisdiction exists because he has had no contacts in Minnesota, and the only allegations against him in the Complaint relate to conduct that did not occur in Minnesota, thereby negating any finding of specific jurisdiction. <u>See</u> Thomas's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 8], pp. 7-8.

Westley countered that since 2007, Thomas has had continuous ongoing business relationships in Minnesota sufficient for a finding a personal jurisdiction, via the sale of his products through Minnesota retailers. <u>See</u> Plaintiff Response Memorandum to Defendant Michael Thomas Tilson Motion to Dismiss [Docket No. 40],, pp. 5-6; <u>see also</u> Unsworn Declaration of Plaintiff Pursuant to 28 U.S.C. Section 1746 [Docket No. 41], ¶ 6 ("I have personally witnessed Defendant Tilson's and Miami City Center New World Symphony products being marketed and sold within Minnesota retail outlets within this forum.").

In reply, Thomas submitted that he has not been involved in the marketing, distribution, or retail sale of New World Symphony products or any other music products

in Minnesota.   Defendants'[10] Joint Reply Memorandum in Support of Motions to Dismiss

Plaintiff's Complaint ("Thomas/CMB/Sklar Reply") [Docket No. 47], p. 4; Declaration of

Richard Koenigsberg[11] ("Koenigsberg Decl.") [Docket No. 48], ¶ 4.   According to

Koenigsberg:

> Thomas does not receive income directly from retail sales
> within Minnesota of New World Symphony products or other
> orchestral products with which he is associated. Tilson
> Thomas receives an advance fee as part of his contract with
> a given record label. Income including any royalties received
> by Tilson Thomas is provided by the record label pursuant to
> record label contracts, and is not attributable to retail sales
> in any given state. Such income is attributable to the state in
> which the musical recording is made.

See Koenigsberg Decl.   ¶ 5.   In any event, Thomas asserted that Westley is attempting

to assert general jurisdiction under a "stream of commerce" theory that has been

rejected by the United States Supreme Court and the Eighth Circuit.     See

Thomas/CMB/Sklar Reply, pp. 5-7 (citing Goodyear Dunlop Tires Operations, S.A. v.

Brown, 131 S. Ct. 2846 (2011); Viasystems, Inc. v. EBM-Papst St. Georgen GmbH &

Co., KG, 646 F.3d 589 (8th Cir. 2011)).

In analyzing the five factors discussed in K-V Pharm. Co., the Court finds that

Westley has not met his burden of making a prima facie case for personal jurisdiction.

First, Thomas has had no direct contact with Minnesota.   He is a music and

artistic director in San Francisco and in Miami Beach.   Further, he is a resident of

Florida, has not been to Minnesota for many years, and had no direct contact with

---

[10]    Defendants Thomas, City of Miami Beach and Sklar are all represented by the
same counsel and submitted a joint reply in connection with their respective motions to
dismiss.

[11]    Richard Koenigsberg is Thomas's business advisor and accountant.     See
Koenigsberg Decl.   ¶ 4.

20

Minnesota during the period of the operative facts of the Complaint or as the date it was filed.   The fact that a record label may distribute in many states, including Minnesota, New World Symphony products (for which Thomas is the conductor) or other orchestral products, is exactly the type of "random," "fortuitous," and "attenuated" contacts that are insufficient to establish personal jurisdiction over Thomas.   See Burger King, 471 U.S. at 475.

As to the third factor, the Court finds that there is no specific jurisdiction over Thomas given there are no allegations that Westley's claims against him arise out of or are related to Minnesota.   See Johnson, 614 F.3d at 795.   The factual basis of the claims against Thomas are that because of his alleged bigotry, he and others attempted to preclude Westley from having access to and using the Property located in Miami Beach, and destroyed improvements made to the Property.   See Complaint, ¶¶ 13, 18. These alleged actions arose in Florida, and the resulting harm is to or from the denial of the use of the Property located in Florida.   In short, none of the allegations against Thomas have anything to do with Minnesota.

As for general jurisdiction, the Court notes, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . ." Goodyear, 131 S. Ct. at 2853.   As stated previously, Westley relies on Thomas selling his music through retail stores in Minnesota.   Here, the evidence is that Thomas has no involvement in the marketing, distribution, or retail sale of New World Symphony products or any other music products within Minnesota.   See Koenigsberg Decl., ¶ 4. Thomas has a contract with a record label that distributes the music for sale.   Id., ¶ 5. Even assuming that Thomas had an expectation that the record label would distribute

his music to many states, including Minnesota, that connection alone is an insufficient

basis to support a finding of general jurisdiction.  As the Eighth Circuit has explained:

> [W]e have been willing to recognize a variant of "stream-of-commerce" jurisdiction over a foreign manufacturer that 'pours its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area," Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 948 (8th Cir.1998) (quoting Barone, 25 F.3d at 615). Because Viasystems' causes of action do not arise out of the distribution of St. Georgen's products in Missouri, there is no dispute that Viasystems must use this "stream of commerce" theory to support general, rather than specific, jurisdiction. However, when our circuit's decision in Barone established the variant of "stream-of-commerce" jurisdiction on which Viasystems now seeks to rely, we were careful to note that "stream of commerce" jurisdiction is "a type of specific jurisdiction (as opposed to general jurisdiction)." Barone, 25 F.3d at 612. Indeed, the Supreme Court recently clarified that placing products in "the stream of commerce" is "[a] connection so limited between the forum and the foreign corporation [that it] is an inadequate basis for the exercise of general jurisdiction." Goodyear, ——U.S. at ——, 131 S.Ct. at 2851, 180 L.Ed.2d at 803.  The Court rejected "the sprawling view of general jurisdiction" that would make "any substantial manufacturer or seller of goods ... amenable to suit, on any claim for relief, wherever its products are distributed." Id. at –——, 131 S.Ct. at 2856, 180 L.Ed.2d at 809.  Our precedent and the Supreme Court's decision in Goodyear make clear that even if a foreign corporation "'pours its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area," Vandelune, 148 F.3d at 948 (quoting Barone, 25 F.3d at 615), this connection alone is "so limited" that it "is an inadequate basis for the exercise of general jurisdiction." See Goodyear, —— U.S. at ——, 131 S.Ct. at 2851, 180 L.Ed.2d at 803.

See Viasystems, Inc., 646 F.3d at 597.  Thus, the mere distribution of music for sale

through a record label is an insufficient basis for this Court to find that general

jurisdiction exists over Thomas in Minnesota.

As to the secondary factors relating to jurisdiction, while in some circumstances, "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents," Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th Cir. 1995), Minnesota has little interest in providing its citizens a forum for a dispute that has no connection to the state. Further, although witnesses reside in both Minnesota and Florida, where the events central to the case against Thomas deal with the Florida Property and its use, it would clearly be inconvenient to drag a Florida defendant and Florida witnesses to Minnesota. Thus, the fourth and fifth factors bearing on the determination of personal jurisdiction do not weigh in favor of jurisdiction in Minnesota.

Based on this Court's examination of the factors for jurisdiction and the totality of the circumstances, it finds that Thomas's motion to dismiss for a lack of personal jurisdiction should be granted and the Complaint against Thomas should be dismissed without prejudice.

**C.     Defendant Victoria Sigler's Motion to Dismiss**

Defendant Judge Sigler is presently a seated judge for the Circuit Court of the Eleventh Circuit Court in and for Miami-Dade County, Florida. See Sigler Decl., ¶ 1. Judge Sigler presided over All for Earth Foundation, Inc. v. City of Miami Beach, Local Case No. 2008-66434-CA-01/State Case No. 13-2008-CA-066434-0000-01, and 605 Lincoln Rd Office Condo Assn., Inc. v. All for Earth Foundation, Local Case No. 2009-73005-CA-01/State Case No. 13-2009-CA-073005-0000-01. Id., ¶ 2. Judge Sigler has not visited Minnesota nor had any contact with Minnesota at the time of the alleged conduct described in this lawsuit, or at the time this lawsuit was filed in late December, 2011. Id., ¶ 3.

Judge Sigler argued that Westley's claims against her are barred under the doctrine of judicial immunity given that he is suing her based on her actions as a judge. See Memorandum of Law In Support Of Defendant Victoria Sigler's Motion to Dismiss [Docket No. 33], pp. 5-6.   In addition, Judge Sigler contended that this Court lacks personal jurisdiction over her since she is a judge seated in Miami-Dade County, Florida; she had no contacts with Minnesota, either at the time of the conduct alleged in the Complaint or at the time the suit was filed in December of 2011; and the alleged actions by her occurred in Florida, with no nexus to Minnesota.   Id. at pp. 7-8.

Westley asserted that under the Due Process Clause, jurisdiction is appropriate, as Judge Sigler has had continuous ongoing contacts with AFTEF and him throughout the litigation in the Miami-Dade County court system.   See Plaintiff Response Memorandum to Defendant Victoria Sigler Motion to Dismiss [Docket No. 44], p. 9.   In addition, Westley argued that since 2008, the Miami-Dade County Court case fees for matters before Judge Sigler were billed to and paid from this forum by AFTEF and him and therefore, she had an ongoing quantifiable employment benefit from Westley's court cases.   Id., pp. 7-9.   Further, Westley claimed that Judge Sigler and her representative agents conspired to obtain payments from him and AFTEF in this forum and then refused to provide purchased public services and records to protect her personal interests and relationships.   Id., p. 9.   Westley also asserted that jurisdiction in Minnesota is appropriate because Minnesota contains the majority of documents and records in this case.   Id.

Westley argued that general jurisdiction exists because Judge Sigler conducted unspecified business and public affairs in Minnesota; and specific jurisdiction exists as

Judge Sigler and representative agents had direct contacts with AFTEF and Westley in this forum relating to the cause of action in this case. Id., p. 10.

Judge Sigler replied that she has nothing to do with the payment of court fees and costs, which are handled by the Miami-Dade County Clerk of Court. See Reply Memorandum of Law in Support of Defendant Victoria Sigler's Motion to Dismiss [Docket No. 46], pp. 2-3.

As a starting point, "[m]inimum contacts are 'defined by the defendant's contacts with the forum *state*, not by the defendant's contacts with *residents* of the forum.'" Telex Communications, Inc. v. Sanomed Medizintechnik, GmbH, No. Civ. 02–298 ADM/AJB, 2002 WL 31398725, at *5 (D. Minn. Oct. 22, 2002) (citing West American Ins. Co. v. Westin, Inc., 337 N.W.2d 676, 679 (Minn. 1983), citing Hanson v. Denckla, 357 U.S. 235, 250-55 (1958)) (emphasis in original)); see also Mountaire Feeds, Inc. v. Argo Impex, S.A., 677 F.2d 651, 655 (8th Cir. 1982) (finding that defendant's contacts with the forum state are relevant for personal jurisdiction, not defendant's contacts with a resident). Consequently, the fact that Westley, a Minnesota resident, paid filing fees to a court in Florida where Judge Sigler is seated and she presided over cases involving Westley, does not amount to contacts with Minnesota. Further, the fact that the majority of documents and records in this case may be housed in Minnesota has nothing to do with Judge Sigler's contacts with Minnesota. Thus, the Court finds that Judge Sigler had no contacts with Minnesota.

While Westley argued that specific jurisdiction exists because Judge Sigler and her representative agents had direct contacts with AFTEF and Westley in this forum relating to the cause of action in this case, the Complaint says otherwise. The only allegations in the Complaint regarding Judge Sigler's conduct are as a judge in Florida

concerning the Florida Property.  See Complaint, ¶¶ 16, 17, 19-20.  As such, the Court finds that the requirements for specific jurisdiction are not met.  Likewise, Westley cannot meet his burden to show that general jurisdiction exists as to Judge Sigler based on unsubstantiated and conclusory assertions that she conducted unspecified business and public affairs in the State of Minnesota.  The only competent evidence before the Court is that Judge Sigler has had no contact with Minnesota, and therefore, a finding of general jurisdiction is not appropriate.

With regards to the secondary factors, for the same reasons articulated by this Court in connection with Thomas's motion to dismiss, neither factor weighs in Westley's favor.

In summary, based on this Court's examination of the factors for personal jurisdiction and the totality of the circumstances, it finds that Judge Sigler's motion to dismiss for a lack of personal jurisdiction should be granted and the Complaint against Judge Sigler should be dismissed without prejudice.[12]

---

[12]    Given that this Court has found that personal jurisdiction over Judge Sigler is lacking, this Court cannot make any finding as to whether Judge Sigler is entitled to judicial immunity.  See Fischer v. Mortg. Elec. Registration Sys., Inc., No. 09–3506 (PJS/JSM), 2010 WL 3283420, at *2 (D. Minn. July 30, 2010) ("As to defendants' desire to waive the issue of lack of personal jurisdiction for the limited purpose of allowing this Court to rule on the merits of their Rule 12(b)(6) motion to dismiss, this Court has no choice but to deny this request as it cannot reach the merits of Fischer's claims without a full waiver of service by defendants."); Woodcock, 444 F.3d at 954 n.2 ("Because we hold that the district court lacked personal jurisdiction, we do not reach the merits of Johnson's Lanham Act claim.").

### D. Defendant City of Miami Beach and Max Sklar's Motion to Dismiss

The City of Miami Beach is a municipality located in Miami-Dade County, State of Florida. See Unsworn Declaration of Richard Lorber[13] Pursuant to 28 U.S.C. § 1746 [Docket No. 24] ("Lorber Decl."), ¶ 3. Defendant Sklar was at all times material to the Complaint, the Tourism & Cultural Development Director for the City of Miami Beach. See Sklar Decl., ¶ 2. Sklar attested that he is a permanent resident of and is domiciled in Florida, he has never personally visited Minnesota, and he had no contact with Minnesota at the time of the alleged conduct described in the Complaint, or at the time this lawsuit was filed in December 2011. Id., ¶¶ 3-5.

Both the City of Miami Beach and Sklar argued that this Court lacks personal jurisdiction over them on the basis that they have had no contacts with Minnesota. See Memorandum In Support of Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(B)(2) [Docket No. 23], pp. 7-8. They also asserted that Minnesota has little interest in providing a forum for the claims against them, where the acts at issue occurred in Florida and it would be burdensome for a municipality to have to defend this action in Minnesota. Id., p. 8.

Westley opposed the motion, contending that personal jurisdiction over the City of Miami Beach and Sklar was appropriate because while in ownership and possession of the Property from 2008-2010, Westley and AFTEF received Miami Beach and Dade County Property Tax notices and levies in Minnesota, which were paid from Minnesota, and that additional payments were billed to and made from Minnesota to the City of Miami Beach for building permits, inspections and fees. See Plaintiff Response

---

[13] Lorber is the Acting Planning and Zoning Director for the City of Miami Beach. See Lorber Decl., ¶ 2.

Memorandum to Defendants Max Sklar & City Of Miami Beach Motion to Dismiss [Docket No. 45], pp. 6-7; Westley Decl., ¶ 2; Unsworn Declaration of Charles Ibanez[14] Pursuant to 28 U.S.C. Section 1746 [Docket No. 42] ("Ibanez Miami/Sklar Decl."), ¶ 2; Unsworn Declaration of Duncan Ross[15] Pursuant to 28 U.S.C. Section 1746 [Docket No. 43] ("Ross Decl."), ¶ 2.

In addition, Westley asserted in his memorandum that from 2008 to present, Sklar, the City of Miami Beach and Thomas have maintained a public-private business partnership at the City Center New World Symphony property, which is used to promote and sell New World Symphony and Thomas's products sold through Minnesota-based retailers and outlets. Id., p. 6. As a result, because Sklar and the City of Miami Beach are profiting from this business in Minnesota, and they have had continuous, ongoing, and substantial business relationships with Minnesota retailers, their contact with Minnesota is continuous and systematic. Id., pp. 8-10. Further, Westley argued that because of Sklar and the City of Miami Beach's actions, he has been subjected to an adverse personal guarantor deficiency judgment that has negatively affected his credit reports within Minnesota. Id., pp. 6, 10. Westley also claimed that Sklar, as Tourism Development Director for the City of Miami Beach, markets and provides information directly to travel agents within Minnesota. Id., p. 8.

In their reply, Sklar and the City of Miami Beach asserted that the declarations submitted by Westley regarding unspecified "payments and correspondence" are deficient as an evidentiary matter, and Westley cannot meet his burden of proof to

---

[14]     Ibanez was a previous director of AFTEF. Ibanez Miami/Sklar Decl., ¶ 1.

[15]     Ross is a business partner of Westley and owner of Fashion Studio LLC which conducted business at the Property. See Ross Decl., ¶ 1.

establish this Court's personal jurisdiction over them.  See Thomas/CMB/Sklar Reply, p. 8.  However, even if the allegations were true, Sklar and the City of Miami Beach maintained that isolated and sporadic correspondence and other communications between them and Westley, located in Minnesota, are insufficient to establish that they purposefully availed themselves of the privilege of conducting activities in Minnesota. Id., pp. 9-10.

As to the assertions that Sklar and the City of Miami Beach are conducting business in Minnesota, they claimed that Westley's bald assertions are false, have no evidentiary support, and they are devoid of any detail that would allow the Court to assess the nature, quality, or frequency of the contacts.  Id., p. 11.  They also claimed that any retail stream of commerce theory to establish general jurisdiction fails for the same reasons as argued in support of Thomas's motion to dismiss, and that Sklar's alleged provision of information to travel agents in Minnesota does not amount to the requisite continuous and systematic general business contacts necessary for a finding of general jurisdiction.  Id., pp. 11-12.  Sklar and the City of Miami Beach reiterated the burden of having to defend this case in Minnesota, located over 3000 miles away from their domicile.  Id., p. 12.

Based on the record before this Court, it finds that neither Sklar nor the City of Miami Beach have any direct connection to Minnesota.  As a general matter, to the extent that Sklar and the City of Miami Beach sent mail to Westley or communicated with him by telephone, "'[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.'"  Woodcock, 444 F.3d at 956 (quoting Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002)); see also Digi–Tel, 89 F.3d at 523  ("Although letters and faxes may be used to support the exercise of

personal jurisdiction, they do not themselves establish jurisdiction."); <u>Toro Co. v. Advanced Sensor Tech.</u>, No. 08–248 (DSD/SRN), 2008 WL 2564336, at *3 (D. Minn. June 25, 2008) (finding that even "relatively large" amounts of electronic communication, without more, does not establish jurisdiction).

Moreover, in this case, the correspondence, mailed payments and other communications all dealt with the Florida Property and had nothing to do with Minnesota, except that the owner of the property is a Minnesota non-profit organization and the guarantor of the loan for the purchase of the Property is a Minnesota resident. This Court finds that such contacts are not germane to whether this Court has personal jurisdiction over Sklar and the City of Miami Beach.  Further, even if this Court accepted Westley's assertions that because of Sklar and the City of Miami Beach's actions in Florida, a judgment was obtained against him in a Florida Court that negatively affected his credit reports within Minnesota, such an effect does not amount to the type of contact with Minnesota required for personal jurisdiction.  It is the intentional contact with the forum state and not the incidental effect of an action outside the state that is relevant to this determination.  <u>See</u> <u>Wells Fargo Bank Minnesota, N.A. v. Lowe's Companies Inc.</u>, No. CIV. 01-1548 (PAM/JGL), 2002 WL 534888, at *2 (D. Minn. March 29, 2002) (finding that "it is clear that Lowe's did not direct any actions toward Minnesota and therefore could not have intended to cause harm in Minnesota. . . . Wells Fargo overlooks the requirement that, in order for personal jurisdiction to lie, the nonresident defendant must have purposely directed activities toward the forum state.") (citing <u>Oriental Trading Co. v. Firetti</u>, 236 F.3d 938, 943 (8th Cir. 2001)).

The balance of the Complaint alleged that Sklar and the City of Miami Beach conspired, for racially and religiously motivated reasons, to deny Westley's First

Amendment freedom of association right to employ and conduct business on the Property; took away his access and use of the eighth floor and rooftop of the building and sidewalk frontage on the Property; had communications with Westley regarding the need to bring the Property into compliance with state and federal regulations; attempted to prevent Westley from having access to the Property; attempted to obstruct a federal investigation; conspired to deny him access to Florida courts; used police to break up an assembly at the Property; issued building permits to third parties that authorized and resulted in the destruction of the improvements made to the Property; and precluded fundraisers from taking place on the Property. <u>See</u> Complaint, ¶¶ 11, 12, 14-21. All of these alleged activities bear on the Property located in Florida and actions taken in Florida that resulted in alleged harm to Westley related to this Florida Property. None of them relate to Minnesota. On these "facts," the Court finds that specific jurisdiction over Sklar and the City of Miami Beach in Minnesota is lacking.

As to general jurisdiction, as this Court determined with regards to Thomas, Westley has provided no evidence that Sklar or the City of Miami Beach took affirmative actions to market or sell music in Minnesota, and jurisdiction cannot be premised on a "stream of commerce" theory. In addition, despite Westley's unsubstantiated allegation that Sklar provides information to travel agencies in Minnesota, this fact, even if true, cannot establish general personal jurisdiction over Sklar because there is no factual basis to conclude that Sklar's domicile was Minnesota or that Sklar or his employer, the City of Miami Beach, could be "fairly regarded as at home" in Minnesota. <u>See Goodyear Dunlop Tires Operations, S.A.</u>, 131 S. Ct. 2846 at 2853-54, 2855-57; <u>see generally</u>, <u>Burlington Indus., Inc. v. Maples Indus., Inc.</u>, 97 F.3d 1100, 1103 (8th Cir. 1996) ("Simple commercial contacts, unrelated to [plaintiff]'s claims are insufficient to

31

establish [general] personal jurisdiction."). Finally, there is no evidence before the Court that either Sklar or the City of Miami Beach maintain any presence in Minnesota or that they are authorized to do business in Minnesota; there is no evidence that they have agents or employees in Minnesota or for that matter have any connection to Minnesota; there is no evidence of any contractual relationship between these defendants and the travel agencies; there is no evidence that these defendants have any control over what the travel agents in Minnesota do with the information provided to them; and there is no evidence that the marketing information was directed at Minnesota tourists, as opposed to being a part of nation-wide advertising. See Elayyan v. Sol Melia, SA, 571 F. Supp.2d 886, 899 (N.D. Ind. 2008) (citing Szakacs v. Anheuser-Busch Cos., Inc., 644 F. Supp. 1121, 1124-25 (N.D. Ind. 1986)) ("General jurisdiction cannot be based on nationwide advertising alone."). In other words, the "occasional acts" of providing information to independent travel agents in Minnesota may be sufficient to render Sklar or the City of Miami Beach answerable in Minnesota to actions relating to these actions, but it is not sufficient to make them answerable "to matters unrelated to the forum connections." Goodyear Dunlop Tires Operations, S.A., 131 S. Ct. 2846 at 2853 (quoting Int'l Shoe, 326 U.S. at 318). Neither Sklar nor the City of Miami Beach could reasonably have anticipated being haled into court in Minnesota based on the fact that information regarding the City of Miami Beach is provided to Minnesota travel agents. Such actions do not amount to continuous or systematic contacts necessary for a finding of general jurisdiction.

As to the secondary factors, for the reasons previously stated, neither weigh in favor of personal jurisdiction.

For all of these reasons, this Court reaches the inescapable conclusion that Sklar and the City of Miami Beach's motion to dismiss for a lack of personal jurisdiction should be granted and the Complaint against these defendants should be dismissed without prejudice.

### E.   Defendants Steven P. Kalka and Silver Hill Financial, LLC's Motion to Dismiss and/or for Summary Judgment

#### 1.   Personal Jurisdiction as to Kalka

Defendant Kalka is a permanent resident of Florida and has never visited Minnesota.  See Kalka Aff., ¶¶ 1, 2.  Kalka attested that he had no contact with Minnesota during the time of the alleged conduct described in the Complaint or at the time the action was initiated in December 2011.  Id., ¶¶ 3, 4.  Based on these facts, Kalka argued that personal jurisdiction over him is lacking.  See Defendants Steven P. Kalka and Silver Hill Financial, LLC's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint and/or for Summary Judgment ("Kalka/Silver Hill Mem.")[Docket No. 62], p. 9.  Kalka also asserted that the Complaint offers no factual basis that could support a finding of personal jurisdiction over him, either under a theory of general jurisdiction or specific jurisdiction.  Id., p. 10.  As to the remaining factors bearing on jurisdiction, Kalka contended that because Westley's claims against him relate to conduct alleged to have occurred far from Minnesota, this Court has little interest in providing a forum for the claims alleged against Kalka, and the convenience of the parties similarly weighs against a finding of personal jurisdiction.  Id., p. 10.

Westley responded that Kalka, as the "sellers agent and negotiating representative of Silver Hill Financial," made phone calls and sent emails, property records, purchase and mortgage agreements, lien searches, closing correspondence,

tax statements, UCC financing information, assignments, owner affidavits, and property insurance requests to AFTEF and Westley located in Minnesota, for the purpose of inducing Westley to personally guarantee the transaction pertaining to the Property. See Plaintiff Response Memorandum to Defendants Steven P. Kalka & Silver Hill Financial Motions to Dismiss Complaint and/or for Summary Judgment [Docket No. 76] ("Pl.'s Kalka/Silver Hill Mem."), p. 11; Westley's Kalka/Silver Hill Decl., ¶¶ 2, 4; Unsworn Declaration of Charles Ibanez Pursuant to 28 U.S.C. § 1746, ¶ 2 [Docket No. 29] ("Ibanez Kalka/Silver Hill Decl."); Unsworn Declaration of Duncan Ross Pursuant to 28 U.S.C. § 1746, ¶ 2 [Docket No. 80] ("Ross Kalka/Silver Hill Decl."). Westley further asserted that Kalka has had continuous, ongoing and substantial business-related contacts and property holdings throughout Minnesota, in the form of real estate holdings in Minnesota and ongoing substantial business relationships through many Minnesota-based real estate agents and mortgage brokers. See Pl.'s Kalka/Silver Hill Mem., pp. 12, 14; Westley's Kalka/Silver Hill Decl., ¶ 8. Therefore, because Kalka has availed himself of the privilege of conducting activities in Minnesota, general jurisdiction exists. Pl.'s Kalka/Silver Hill Mem., pp. 12, 14.

As for specific jurisdiction, Westley argued that it exists, as Kalka had direct contact with him and executed an agreement with a Minnesota-based entity relating to the causes of action in this case. Id., p. 14. Further, Westley maintained that Minnesota has an interest with providing him with an unbiased forum and that most of his records and the records of AFTEF, required in this action, are on file within Minnesota. Id., p. 13; Westley's Kalka/Silver Hill Decl. ¶ 3; Ibanez Kalka/Silver Hill Decl. ¶ 3.

The Eighth Circuit has found that "[a] contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." K-V Pharm. Co., 648 F.3d at 593 (citing Burger King, 471 U.S. at 478-79). Consequently, the factual background regarding the formation of the contract and the subject matter of the contract must be examined to determine whether a defendant purposefully established minimum contacts within the forum. Id. (citations omitted). In K-V Pharm. Co., the court found that the foreign defendant's "purposeful contacts" with the forum state included: "[l]etters, emails, and telephone calls to KV before May 1993 that were part of the contract negotiations;" the active involvement of at least twenty of the defendant's employees in those contract negotiations over a period of years; communications by the defendant to carry out the contract, including seeking regulatory approval; a face-to-face meeting in the forum state to renegotiate the contract's payment terms; defendants' payments to the plaintiff in the forum; a choice-of-law provision in the contract that provided that the law of the forum (Missouri) applied; and the defendant agreed via the contract to conduct substantial activity in the forum state. Id. at 593-94. Based on this level of involvement, the court concluded that the minimum contacts necessary to confer personal jurisdiction over the defendant existed such that the defendant could have reasonably anticipated being haled into court in Missouri in the event of a dispute involving the contract. Id. at 594-97.

In reaching this decision, the Eighth Circuit distinguished Digi–Tel Holdings, Inc., supra, in which the Eighth Circuit had determined that personal jurisdiction over the foreign defendant was lacking:

True enough, the Singapore company in <u>Digi–Tel</u> exchanged telephone calls, letters, and faxes with the Minnesota company, and the contract contained a Minnesota choice-of-law provision. <u>Id.</u> at 523. But all of the face-to-face meetings occurred in Singapore and "[n]o part of the contract was to be performed in Minnesota." <u>Id.</u> at 525. The Singapore company "was to develop and produce the phones [that the Minnesota company purchased] overseas and [was to] transfer ownership to [the Minnesota company] in Singapore." <u>Id.</u> Because the "delivery term was 'F.O.B. Singapore' ..., the seller was obligated to deliver to Singapore and nowhere else." <u>Id.</u> ... In contrast, the parties here (1) had a long-term product-development contract that would require Uriach to have a continuing relationship with Missouri; (2) the parties engaged in a face-to-face meeting in Missouri to negotiate an amendment to their contract; (3) the contract terms governing the sale and delivery of Flutrimazole required Uriach to ship the drug to Missouri; and (4) Uriach made payments to KV, which is based in Missouri. These facts distinguish <u>Digi–Tel</u> from the case before us.

<u>K–V Pharm. Co.</u>, 648 F.3d at 595-96.

In support of specific jurisdiction, Westley asserted that Kalka's connection to Minnesota included calling and sending emails and records to AFTEF and Westley in Minnesota regarding the sale of the Property, all for the purpose of inducing Westley to personally guarantee the loan with Silver Hill pertaining to the Property, and to wire $10,000 from his Wells Fargo account in St. Paul to Silver Hill Financial.

The Court finds that the facts in this case are more similar to those in <u>Digi–Tel</u> than <u>K-V Pharm. Co.</u>.  There is no evidence that Kalka ever travelled to Minnesota to negotiate the purchase agreement on behalf of Bayview or loan on behalf of Silver Hill Financial.  To the contrary, Kalka has attested that he has never been in Minnesota. Westley presented nothing to the contrary and in fact, at the hearing, he represented that he had several meetings with Kalka as to the Property in Florida.  The purchase agreement and mortgage pertain to a piece of property in Florida and the requirements

within the agreement pertain to activities occurring in Florida.   See Docket No. 76-1 (Purchase Agreement for Property).[16]   The agreement is governed by Florida law.   Id., p. 13.   Westley wired funds from Minnesota to recipients who were located in Miami, Florida.   See Docket No. 77-1, 2, 3.   Additionally, to the extent that Westley has alleged wrongful conduct by Kalka following the purchase of the Property, this conduct bears on his alleged role in prohibiting access to the Florida Property.   See Complaint, ¶¶ 11, 14. None of this conduct dealt with or took place Minnesota.   On this record, the Court finds that Westley has not met his burden of establishing specific jurisdiction over Kalka.

With regards to general jurisdiction, Westley only provided this Court with arguments in his opposition brief (and not evidence) that Kalka has had continuous, ongoing and substantial business-related to contacts and property holdings throughout Minnesota, in the form of real estate holdings in Minnesota and ongoing substantial business relationships through many Minnesota-based real estate agents and mortgage brokers.   It is Westley's burden to "prov[e] facts supporting" the exercise of personal jurisdiction here.   Coen v. Coen, 509 F.3d 900, 904 (8th Cir. 2007) (citing Dever, 380 F.3d at 1072).   "[T]he plaintiff attempting to make this prima facie showing—like the defendant seeking dismissal—cannot rely on pleadings alone. Instead, the parties must present affidavits or other evidence outside of the pleadings."   Pope v. Elabo GmbH, 588 F. Supp.2d 1008, 1014 (D. Minn. 2008) (citing Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974)); see also Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982) ("'there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist. . . .'") (quoting Aaron Ferer &

---

[16]   This Agreement is between Bayview Lincoln Road LLC and AFTEF.   See Docket No. 76-1, pp. 1, 4.   It was signed by Kalka on behalf of Bayview Lincoln Road.   Id., pp. 16, 19.   As stated previously, Bayview Lincoln Road is not a defendant in this case.

Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977)). Having failed to provide any admissible evidence of substantial activities by Kalka in Minnesota, Westley's claim of general jurisdiction over Kalka must be rejected.

Again, as to the remaining factors bearing on personal jurisdiction, this Court finds that they do not weigh in favor of jurisdiction.

For all of these reasons, Kalka's motion to dismiss for a lack of personal jurisdiction should be granted and the Complaint against Kalka should be dismissed without prejudice.

### 2. Silver Hill Financial[17]

On January 11, 2008, AFTEF executed a Mortgage and Security Agreement ("Mortgage") in favor of Silver Hill Financial to secure a loan by Silver Hill Financial to AFTEF for the purchase of the Property, which was recorded with the Clerk of Court for Miami-Dade County on January 14, 2008. See Dempsey Aff., Ex.1. Westley guaranteed full performance of AFTEF's obligations to Silver Hill Financial under the loan by Silver Hill Financial to AFTEF. Id., Ex. 2 (Guaranty). On January 11, 2008, Silver Hill assigned the Mortgage to Bayview Loan Servicing, LLC ("Bayview"), including the note from AFTEF to Silver Hill Financial, and the assignment was recorded on July 23, 2008 with the Clerk of Court for Miami-Dade County. Id., Ex. 3.

Bayview subsequently obtained a Final Judgment of Foreclosure against AFTEF, a Certificate of Title was then issued in favor of Bayview on May 11, 2010, and Final Judgment on Deficiency was entered against Westley and AFTEF, jointly and severally, for $141,462.29 in the matter of Bayview Loan Servicing, LLC v. All for the Earth Found., Case No, 09-09110 CA25 ("Florida Action"). Id., Exs. 4 (Final Judgment on

---

[17]     Silver Hill Financial did not argue that personal jurisdiction over it does not exist.

Deficiency), 6 (Order Granting Motion to Preclude Further Self-Representation by John Westley in this Court).

Bayview sought removal of the tenants of the Property in <u>Bayview v. The Womb, Inc., et al.</u>, Case No. 10-1399 CC24.  <u>Id.</u>, Ex. 6, p. 4.  The tenants were ordered by the court to deposit $38,000 into the court registry as a condition of defending the action, which they did not do, and the court subsequently ordered the removal of the tenants from the Property.  <u>Id.</u>, Exs. 5 (Final Judgment for Removal of Tenants), 6.

Bayview subsequently filed a reforeclosure action in <u>Baview v. The Womb, Inc., et al.</u>, Case No. 10-25216 CA24, to extinguish liens that Westley placed on the Property before the foreclosure.  <u>Id.</u>  The court entered a final Judgment of Reforeclosure on August 26, 2010.  <u>Id.</u>, Ex. 6, p. 5.  On November 16, 2010, Westley recorded a lien against the Property, claiming that he was owed $171,170 by Bayview for the improvements he made on the property.  <u>Id.</u>  On February 15, 2011, Westley filed a pro se third party complaint against Bayview and another for trespass, conversion, tortious interference, breach of contract, breach of covenant for quiet enjoyment, negligent hiring, negligent retention, endangerment, conversion, fraud, fraud in the inducement, misrepresentations, racial harassment, civil rights discrimination, extortion, collusion, abuse of process and identity theft.  <u>Id.</u>, pp. 5-6.  Bayview filed a motion to dismiss, and while Westley filed a motion to amend his complaint, he refused to file the proposed amended complaint.  <u>Id.</u>, p. 6.  Based on Westley's alleged repeated violations of court orders, violations of court rules, his interference with court administration and repeated filing of immaterial and irrelevant pleadings, on October 25, 2011, the Miami-Dade County court barred Westley from proceeding pro se in the Eleventh Judicial Circuit in and for Miami-Dale County, Florida.  <u>Id.</u>, p. 7.  The case was stayed 60 days to allow

Westley the opportunity to secure counsel.  Id.  No evidence was presented that there was a final adjudication on the merits of this case.

Silver Hill Financial contended that Westley's claims are barred under the doctrine of res judicata because it (through its assignment of the Mortgage to Bayview) and Westley were the same parties as the parties in the Florida Action; the instant case involves the same issues that were raised or could have been raised in the Florida Action; and the Florida court had competent jurisdiction over the Florida Action.  See Kalka/Silver Hill Mem., pp. 12-14.

Silver Hill Financial also argued Westley's Complaint fails to state a claim upon which relief may be granted under Rule 12(b)(6).  In support, Silver Hill Financial explained:

> Even granting Westley the deference afforded to pro se litigants, Westley's complaint utterly fails to meet the pleadings requirements of Rule 8 and must be dismissed. Westley's claims are unintelligible at best. The allegations of the Complaint are certainly not short, simple, concise or direct. Rather, the claims are rife with legal conclusions. Westley throws out labels such as fraud, misrepresentation and breach of fiduciary duties, but offers no factual basis for any of said claims. In fact, it is difficult to find even one fact in the nearly thirteen pages of Westley's allegations which could support his cobbled-together allegations. Westley has failed to provide the Court with any factual content which, even taken as true, would allow the Court to draw the inference that Silver Hill is liable for the conduct charged. Instead, Westley's allegations are bare, conclusory and impossible to comprehend. Under the pleading requirements established by the U.S. Supreme Court in Iqbal and Twombly, dismissal is plainly appropriate.

Id., p. 16.

Westley maintained that he could not have asserted his right to access the courts claim in the Florida Action; defendants failed to show that he was a party to the tenant

eviction action; he has viable claims Silver Hill Financial regarding its failure to meet its obligation to provide ADA accessible property and condominium units certified for occupancy; and he has viable claims for Silver Hill Financial's discriminatory acts based on his minority associations. See Pl.'s Kalka/Silver Hill Mem., p. 15. Westley also asserted that his Complaint provided clear factual assertions and causes of action. Id., pp. 15-16.

As best as this Court can discern from Westley's convoluted "throw everything against the wall and hope that it sticks" Complaint, he has asserted five different categories of claims against Silver Hill Financial.

Westley's first set of claims relate to alleged fraudulent statements made by Silver Hill Financial to induce him to guarantee the loan for the purchase of the Property, including fraudulent misrepresentations with regards to the Property's marketability, usability or accessibility; whether the Property had a Certificate of Use; the existing tenants of the Property; and representations regarding an alleged payment of $117,000 made to the City of Miami Beach for property fees. See Complaint, ¶¶ 7-10. Westley claimed that these false and misleading representations violated federal statutes including "TILA," "FERA," "RICO," UCC law," "Federal UCC wire and mail fraud regulations," and the "Federal UBC" (Federal Uniform Building Code). Id. Additionally, Westley alleged that the fraudulent inducements by Silver Hill Financial amounted negligence, breach of contract, breach of fiduciary duties and unjust enrichment. Id., ¶ 7.

These fraudulent inducement claims fail for several reasons.  First, as urged by Silver Hill Financial, they are barred by the doctrine of res judicata.  Under Florida law,[18] "[i]t is well established 'that for the doctrine of res judicata to apply, several conditions must exist, which include: 'identity of the thing sued for; identity of the cause of action; identity of [the] parties; and identity of the quality in the person for or against whom the claim is made.'"  Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So.2d 1216, 1235 (Fla. 2006) (quoting Albrecht v. State, 444 So.2d 8, 12 (Fla. 1984), superseded by statute on other grounds, Bowen v. Fla. Dep't of Envtl. Regulation, 448 So.2d 566 (Fla. 2d DCA 1984)).  "The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht, 444 So.2d at 12 (citations omitted).

"[R]es judicata may apply despite the fact that appellee was not a party to the Florida Bar proceedings if there was privity."  Corbin v. Bayles, 903 So.2d 1051, 1052 (Fla. 1st DCA 2005) (citing Gentile v. Bauder, 718 So.2d 781, 783 (Fla. 1998)).  Further, "[a] judgment on the merits rendered in a *former* suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla. 2001) (emphasis in original) (quoting Kimbrell v. Paige, 448 So.2d 1009, 1012

---

[18]  "'The law of the forum that rendered the first judgment controls the res judicata.'" Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting Laase v. County of Isanti, 638 F.3d 853, 856 (8th Cir. 2011)).  As such, the Court applies Florida law to the issue of whether the doctrine of res judicata is applicable to this case based on decisions rendered in Miami-Dade County Court.

(Fla. 1984), quoting Wade v. Clower, 94 Fla. 817, 114 So. 548, 552 (Fla. 1927)).  The burden of establishing res judicata is on the party claiming the benefit of the doctrine. DeCancino v. E. Airlines, Inc., 283 So.2d 97, 98-99 (Fla. 1973).

In the Florida Action, the court assessed a deficiency judgment against Westley in the amount of $141,462.29, arising from the foreclosure of the Property and the Guaranty executed by Westley on January 11, 2008.  See Dempsey Aff, Ex. 1 (Mortgage), p. 31; Ex. 2 (Guaranty); Ex. 4 (Final Judgment on Deficiency).  In the case before this Court, "the identity of the thing being sued for" relates to and arises out of this same guaranty.  The evidence needed to resolve the Florida Action and the claims set forth in Paragraphs 7-10 of the Complaint are the same: the Mortgage; the Guaranty; evidence that AFTEF did not meet the requirements of the loan and Mortgage; and any evidence of defenses by Westley asserted or that could have been asserted by Westley to avoid a finding that he was bound by the guaranty of the loan agreement, including fraudulent inducement, breach of contract, breach of fiduciary duty, or unjust enrichment.[19]  Thus, given that the facts needed to maintain the suits in both the Florida Action and the instant action are the same, the Court finds that the identity of the thing sued for and the identity of the causes of actions are the same.  See Tyson v. Viacom, Inc., 890 So.2d 1205, 1209 (Fla. 4th DCA 2005) (en banc) (quoting Albrecht, 444 So.2d at 12) ("Identity of the cause of action is the requirement at issue in the case at bar. The presence of this identity is a question of 'whether the facts or evidence necessary to maintain the suit are the same in both actions.'").

---

[19]    The Court questioned Silver Hill Financial's counsel at the hearing whether such claims could have been asserted as part of foreclosure action. The Court now understands that the Florida Action was a suit to recover the deficiency judgment on Westley's guaranty of the loan from Silver Hill Financial to AFTEF.

Furthermore, as Westley was a defendant in the Florida Action brought by Bayview and Silver Hill Financial's rights in the loan and Mortgage and Security Agreement were transferred to Bayview, the parties are in privity, and accordingly, the Court finds there was sufficient identity of the parties. See Rhyne v. Miami-Dade Water and Sewer Auth., 402 So.2d 54, 55-56 (Fla. 3d DCA 1981) (citation omitted) (finding that privity for the res judicata can denote mutual or successive relationship to the same right of property).

On this basis, this Court finds that the doctrine of res judicata applies to and bars any claims of fraudulent inducement, breach of contract or breach of fiduciary duty against Silver Hill Financial in the Complaint as it relates to Westley's guaranty of the loan.[20]  These claims against Silver Hill Financial should be dismissed with prejudice.

Second, even if these claims against Silver Hill Financial were not barred by the doctrine of res judicata, Westley's assertions against Silver Hill Financial that its fraudulent inducements violated "TILA," "FERA," "RICO," UCC law," "Federal UCC wire and mail fraud regulations" and the "Federal UBC," fail to state a claim as matter of law.[21]  Not only are these conclusory allegations woefully inadequate to meet the

---

[20]  Westley asserted that his ability to obtain evidence from Miami-Dade County Court to contest the applicability of doctrine of res judicata to his claims has been hindered by Miami-Dade County Court.  However, where the Court has been provided a copy of the underlying judgment from the deficiency judgment action, rank assertions and speculation that there may be additional evidence in the Miami-Dade County Court's records germane to the issue of personal jurisdiction will not be permitted to delay this Courts' recommendation that any claims of fraudulent inducement, breach of contract or breach of fiduciary duty against Silver Hill Financial in the Complaint should be dismissed.

[21]  Silver Hill Financial did not make any specific argument regarding the violations of TILA, FERA, RICO, UCC law, Federal UCC wire and mail fraud regulations and the Federal UBC.  Nonetheless, the Court "has the power to sua sponte dismiss a complaint for failure to state a claim."  Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.

pleading requirements articulated by the United States Supreme Court in Iqbal, but these statutes or regulations either do not do not provide a private cause of action or do not exist.  For example, with regards to the Federal Truth and Lending Act ("TILA") claim, "courts have consistently held that loans obtained to purchase non-owner occupied rental property are for a 'business purpose' and are not covered by TILA." Lind v. New Hope Prop., LLC, Civil No. 09-3757 (JBS/KMW), 2010 WL 1493003, at *5 (D.N.J. Apr. 13, 2010) (collecting cases).  Claims under the Fraud Enforcement and Recovery Act of 2009 ("FERA"), only apply to fraudulent claims for payments made to the federal Government, for which there is no such allegation in the present Complaint, nor can this Court conceive of any such facts.  See 31 U.S.C. §§ 3729, 3730.  In order to state a claim for damages under RICO, a complaint must "show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Crest Const. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009), quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted)).  Westley has not properly pled the elements, much less facts to support the elements of a RICO claim, in his Complaint.  There is no Federal Uniform Building Code, nor is there a "Federal UCC law."  See Ojemeni v. Sanchez, Civil Action File No. 1:10–CV–04100–TWT–AJB, 2010 WL 5684400, at *3 (N.D. Ga. Dec. 20, 2010) (citing Motorola, Inc. v. Perry, 917 F .Supp. 43, 48 n.5 (D.D.C. 1996)) ("[T]he Uniform Commercial Code is not a federal statute.  Thus, a civil action based on the UCC does not arise under the laws of the United States, and, therefore, does not provide a court

---

1991) (quoting Mildfelt v. Circuit Court, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam)); Hanson v. Sullivan, (NO. 3:91-706), 1992 WL 227610, at *3 (D. Minn. June 02, 1992) (dismissing suit sua sponte for failure to state a claim where it was obvious that the plaintiff could not prevail on the facts alleged).

with federal question jurisdiction.") (citations omitted). On this basis, all claims by Westley against Silver Hill Financial pursuant to TILA, FERA, RICO, "UCC law," "Federal UCC wire and mail fraud regulations," and the "Federal UBC" should be dismissed with prejudice.

With respect to Westley's second and third set of claims against Silver Hill Financial as set forth in paragraph 14 of the Complaint – (a) that Silver Hill Financial violated TILA, FERA, OSHA, Federal UCC regulations and contractual, fiduciary and administrative professional obligations by failing to respond to correspondence from him requesting compliance with all OSHA standards, the Federal UBC, and fire, life and safety regulations, and (b) that it violated Federal Civil Rights protections, TILA, FERA, OSHA, RICO, UCC and federal mail wire fraud regulations by tortuously interfering with his access to the Property and his business interests due to his association with minority business associates – this Court finds that they too fail to state a claim as a matter of law and must be dismissed with prejudice.

As just stated, Westley cannot state a viable claim under TILA, FERA, RICO, Federal UCC regulations and the "Federal UBC." Further, there is no private cause of action under OSHA. See Nesbitt v. Hobart Co., No. EDCV10–1123–CJC (DTB), 2012 WL 1463541 at *5 (C.D. Cal. March 12, 2012) ("'OSHA violations do not themselves constitute a private cause of action for breach.'") (quoting Crane v. Conoco Inc., 41 F.3d 547, 553 (9th Cir. 1994)) ("nothing in this chapter shall be construed to . . . enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees."); Thornton v. AT&T Mobility Servs., Inc., No. 10-3073, 2010 WL 3834518, at *4 (C.D. Ill. Sept. 14, 2010) ("OSHA does not authorize a private cause of action. The statute authorizes a person to report violations to the

Secretary of Labor. The Secretary of Labor is then charged with enforcing the statute.")
(citing 29 U.S.C. § 660(c)(2)); Persons v. WDIO-TV, NO. CIV 09-2884 JRT/RLE, 2010
WL 3521950, at *17 (D. Minn. Aug. 09, 2010) (finding that OSHA does not afford a
private cause of action).

Additionally, Westley failed to identify the statute encompassed by his reference
to "Federal Civil Rights," the statutory provisions of the ADA he claims were violated, or
the federal fraud statute he is relying upon for these claims.[22]  Nor did he set forth any
facts to apprise Silver Hill Financial of the nature of the contractual, fiduciary or
professional relationships he claims bear on these claims, as required by Iqbal and its
progeny, making it impossible for Silver Hill Financial to properly respond to the claims
and for this Court to determine if such claims are even viable.

Westley's fourth and fifth set of claims against Silver Hill Financial, to the effect
(a) that its "racial prejudices, bigoted acts, malfeasance, fraud, conspiracy,
misrepresentations and violations of Civil Rights, OSHA, TILA, RICO, USERRA, and
OSHA Federal law and regulations displaced him from his place of employment and
denied him access" to the Property (Complaint, ¶ 21), and (b) that its alleged
"negligence and endangerment prevent[ed] safe access and use of the" Property and
"its racial bias and religiously discriminatory acts" purportedly violated "Federal Civil
Rights protections, OSHA, UBC fire, life and safety protections, ADA law, and RICO
statutes," (Complaint. ¶ 22), fail for the very same reasons as his other claims under

---

[22]    This Court notes that Westley provided in his Complaint that federal question
jurisdiction in this case was based upon, in part, on the federal mail fraud statute (18
U.S.C. § 1341) and the federal wire fraud statute (18 U.S.C. § 1343).  See Complaint,
pp. 3-4.  However, there is no private cause of action under these statutes.  See
Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999) ("we
agree with the Fifth and Sixth Circuits and hold that Congress did not intend to create a
private right of action in enacting either the mail or wire fraud statutes.").

these provisions. Westley has not alleged the facts to make out necessary elements for a RICO claim; there are no causes of action under TILA or OHSA; and the Court cannot discern which "Federal Civil Rights," fire, life or safety protections, or provision of the ADA are implicated by Westley's suit against Silver Hill Financial.

As for his USERRA claim, assuming that Westley is referring to the Uniformed Services Employment and Reemployment Rights Act, which requires that a returning military service member be reemployed "in the position of employment in which the person would have been employed if the continuous employment . . . had not been interrupted" by the military service (see 38 U.S.C. § 4313(a)(1)(A)), there is no allegation in the Complaint and no evidence was presented to establish that Westley was a member of the military service and was not allowed "reemployment" by Silver Hill Financial.   In fact, Westley never alleged that he had been employed by Silver Hill Financial,

Finally, Westley's contention that his personal wire information, financial and banking records provided to Silver Hill Financial and others, were used for identity theft, false reporting, and credit fraud in violation of FCRA and Federal Wire Fraud statutes, fails to state a claim for relief.   Complaint, ¶ 23.   To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, ... asks for more than a sheer possibility that a

defendant has acted unlawfully." <u>Ritchie v. St. Louis Jewish Light</u>, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).

Here, Westley pled no facts to from which it could determine that Silver Hill Financial did anything that resulted in identity theft or a violation of FCRA or Federal Wire Fraud statutes (which do not even afford him a cause of action as set forth above). Thus, the Court finds that this claim as currently pled fails to state a plausible claim under Rule 8(a)(2).

In summary, all claims against Silver Hill Financial should be dismissed. The only remaining question is whether they should be dismissed with or without prejudice. The Court concludes that all claims pertaining to fraud in the inducement (and associated claims of breach of contract, breach of a fiduciary duty and unjust enrichment) related to Westley's guaranty of the purchase and financing of the Property are barred under the doctrine of res judicata and should be dismissed with prejudice. Further, any purported claims under OSHA, TILA, FERA, the "Federal UCC," the "Federal UBC," wire and mail fraud statutes (18 U.S.C. § 1341 and 18 U.S.C. § 1343), and USERRA should also be dismissed with prejudice. The remaining claims against Silver Hill Financial pertaining to "Federal Civil Rights," RICO, the ADA, and the FCRA, which could theoretically could state of action if properly pled, should be dismissed without prejudice.

## <u>RECOMMENDATION</u>

For the reasons set forth above, it is recommended that:

1.     Defendant Michael Tilson Thomas's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 6] be **GRANTED** and that the Complaint as to Thomas be dismissed **WITHOUT PREJUDICE**;

2.      Defendants Victoria Sigler's Motion to Dismiss [Docket No. 11] be **GRANTED** and that the Complaint as to Thomas be dismissed **WITHOUT PREJUDICE**;

3.      Defendant City of Miami Beach and Max Sklar's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 21] be **GRANTED** and that the Complaint as to City of Miami Beach and Max Sklar's be dismissed **WITHOUT PREJUDICE**; and

4.      Defendants Steven P. Kalka and Silver Hill Financial, LLC's Motion to Dismiss Plaintiff's Complaint And/or for Summary Judgment [Docket No. 60] be **GRANTED**.  All claims in the Complaint against Steven P. Kalka should be dismissed **WITHOUT PREJUDICE**.  All claims against Silver Hill Financial pertaining to fraud in the inducement (and associated claims of breach of contract, breach of a fiduciary duty and unjust enrichment) related to Westley's guaranty of the purchase and financing of the Property are barred under the doctrine of res judicata and should be dismissed **WITH PREJUDICE**.  Any purported claims against Silver Hill Financial under OSHA, TILA, FERA, the "Federal UCC," the "Federal UBC," wire and mail fraud statutes (18 U.S.C. § 1341 and 18 U.S.C. § 1343), and USERRA should also be dismissed **WITH PREJUDICE**.  The remaining claims against Silver Hill Financial pertaining to "Federal Civil Rights," RICO, the ADA, and the FCRA should be dismissed **WITHOUT PREJUDICE**.


Dated:      August 15, 2012

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 29, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within fourteen days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 29, 2012**.