UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOHN D. WESTLEY,                              CIVIL NO. 11-3704 (JNE/JSM)

       Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

JAMES ROBERT MANN, et al.,

       Defendants.


The above matter came on before the undersigned upon Defendant Wayne M.

Pathman's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2)

[Docket No. 84]; and Plaintiff's Response Extension Motion & Showing to Defendant

Wayne P. Pathman's Motion to Dismiss Complaint [Docket No. 96].

Plaintiff John D. Westley appeared pro se. John A. Moore, Esq. and Kaisa M.

Adams, Esq. appeared on behalf of defendant Wayne M. Pathman.

These motions have been referred to the undersigned Magistrate Judge for a

Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A),

(B) and Local Rule 72.1(c).

## I.     BACKGROUND

Plaintiff John D. Westley has brought an action against James Robert Mann,

Mitchell P. Korus, Steven P. Kalka, Max Sklar, Wayne M. Pathman, Dylan Pukel, Judge

Victoria Sigler, Jennifer Viciedo Ruiz, Michael Thomas Tilson, Silver Hill Financial, and

the City of City of Miami Beach.[1]   According to the Complaint, all of these defendants

---

[1]    None of these parties' roles in this dispute are described by plaintiff in his
Complaint.  From previous motions filed by other parties, this Court has learned that the
City of Miami Beach is a municipality located in Miami-Dade County, State of Florida.
See Unsworn Declaration of Richard Lorber Pursuant to 28 U.S.C. § 1746 [Docket No.
24], ¶ 3.  Defendant Sklar was at all times material to the Complaint, the Tourism &

reside in Florida. See Complaint [Docket No. 1], pp. 1-3. Westley asserted that the basis for venue in the District of Minnesota was that he permanently resides in Minnesota; the facts alleged in the Complaint "primarily occurred thru Federal Wire transfers and United States Postal Service Money Orders originating in the jurisdiction of the Federal District Court of Minnesota;" Westley has been barred from pursuing legal claims in Florida courts; "Defendants and their related agents are attempting to collect a fraudulently obtained judgment against Plaintiff's personal property located in Minnesota;" he was "unlawfully detained by Florida law authorities under the direction of Florida courts due to local public corruption, bias and prejudice designed to prevent public equal protection access sought in Florida civil courts for relief and restitution;" and "the records for the facts alleged in Complaint are stored and filed in Minnesota and kept by the State of Minnesota." Id., p. 4.

---

Cultural Development Director for the City of Miami Beach. See Unsworn Declaration of Max Sklar Pursuant to 28 U.S.C. § 1746 [Docket No. 25], ¶ 2. Defendant Thomas is the Music Director of the San Francisco Symphony, located in San Francisco, California, as well as the Founder and Artistic Director of the New World Symphony, America's Orchestral Academy, in Miami Beach, Florida. See Declaration of Defendant Michael Tilson Thomas [Docket No. 9], ¶¶ 1. Defendant Sigler is presently a judge for the Circuit Court of the Eleventh Circuit Court in and for Miami-Dade County, Florida. See Unsworn Declaration of Defendant Victoria Sigler Pursuant to 28 U.S.C. § 1746 [Docket No. 34], ¶ 1. Silver Hill Financial and Westley entered into loan and a security agreement in favor of Silver Hill Financial, in which Westley guaranteed the loan between it and All for the Earth Foundation ("AFTEF"). See Affidavit of Bryan Dempsey [Docket No. 63] ("Dempsey Aff."), Ex. 1. Kalka was the seller's agent for the property at issue in this case, Bayview Lincoln Road, LLC, and the negotiating agent for Silver Hill Financial. See Unsworn Declaration of Plaintiff Pursuant to 28 U.S.C. § 1746 [Docket No. 78] ("Westley Kalka/Silver Hill Decl."), ¶¶ 2, 4. Mann witnessed the Mortgage documents signed by Westley on behalf of AFTEF and the guaranty executed by Westley. See Dempsey Aff., Exs. 1 (Mortgage), 2 (Guaranty).

The gravamen of Westley's complaint is that he guaranteed a loan by Silver Hill Financial to AFTEF[2] for the purchase of property located in Miami Beach, Florida that had been bought by AFTEF from Bayview Lincoln Road LLC,[3] and for which Silver Hill Financial took a mortgage to secure the loan. Since the purchase of the property, Westley claims that AFTEF and he have been deprived of their use of the property through the acts of all of the defendants. The particulars of the dispute, as set forth in his Complaint, are as follows:

From November 2007 through January 2008, defendants Mann, Korus,[4] Kalka and Silver Hill Financial, via emails, mailings and telephone phone calls to Westley in Minnesota, conspired to fraudulently induce Westley to personally guarantee AFTEF's purchase of property and related deed rights for Condominium Units 270 and 800 of 605 Lincoln Road, Miami Beach, Florida ("the Property") from Bayview Lincoln Road, LLC by Special Warranty Deed dated January 10, 2009, which was recorded in Miami-Dade County Florida. Complaint, ¶ 7. The property was not marketable, usable or accessible in violation of "FILA,[5] FERA, OSHA, ADA and UBC regulations." Id. Westley had a legal and equitable interest in the Property and was damaged by the negligent acts, breaches of contract, neglect of fiduciary responsibilities, fraudulent

---

[2]     AFTEF is an organization for which Westley serves as their executive director. Unsworn Declaration of Plaintiff Pursuant to 28 U.S.C. Section 1746 [Docket No. 41], ¶ 1. AFTEF is not a party to this suit.

[3]     Bayview Lincoln Road LLC is not a party in this case.

[4]     Westley is seeking a default judgment against both Mann and Korus. See Docket Nos. 92, 93.

[5]     The Court assumes that "FILA" is a typographical error and that Westley meant to reference "TILA." To the best of the Court's knowledge there is no federal FILA statute.

misrepresentations and misleading acts of defendants Mann, Korus, Kalka and Silver Hill Financial in violation of federal law and regulations, who were unjustly enriched in violation of "TILA, FERA, RICO & UCC laws and Federal Mail & Wire Fraud regulations." Id.

Further, defendants Mann, Korus, Kalka and Silver Hill Financial and their representative agents required Westley and AFTEF to obtain acceptable long term tenants for the Property, and incorporated the long term rental agreement into the mortgage terms and loan closing documents provided to Westley for the Property. Id., ¶ 8. Prior to entering into the lease, defendants Mann, Korus, Kalka and Silver Hill Financial and their representative agents made negligent, false and misleading representations to Westley and the tenants regarding the Property and use of the Property to induce Westley and other tenants into signing the long term rental agreement with AFTEF, including representations that the premises had the required Certificate of Occupancy, property access or a Certificate of Use, and was rented and occupied by Sony Music Disco, Inc., pursuant to a recorded lease and the Declarations of Condominium. Id. In fact, Mann, Korus, Kalka and Silver Hill Financial and their representative agents never obtained the required Certificate of Occupancy, property access or a Certificate of Use in violation of "Federal Uniform Building Codes, OSHA commercial property regulation standards, ADA, TILA and FERA federal laws." Id.

From November 2007 through January 2008, defendants Mann, Korus, Kalka and Silver Hill Financial unjustly enriched themselves in violation of "TILA, FERA, RICO and UCC" and harmed Westley through fraudulent and misleading emails and mailings to Westley in Minnesota that provided tax records, documents and information regarding $117,000 in property fee payments for City of Miami Beach Concurrency

Fees made to Senior Planner Henry Johnson in order to obtain Westley's personal guarantee.  Id., ¶ 9.  After the purchase of the Property, defendants Sklar and the City of Miami Beach informed Westley that the payments were not received and Johnson was subsequently convicted of embezzlement and solicitation of bribes as a public official.  Id.  Mann, Korus, Kalka, Sklar, the City of Miami Beach and Silver Hill Financial negligently violated contractual, fiduciary and administrative duties causing financial harm and damage to Westley.  Id.

At the closing of the purchase of the Property, Westley was fraudulently induced by defendants Mann, Korus, Kalka and Silver Hill Financial to personally wire $10,000 from his Wells Fargo account in St. Paul, Minnesota to defendant Silver Hill Financial for property tax escrows, title insurance coverage, legal costs, condominium assessments, closing expenses and real estate agent fees.  Id., ¶ 10.  These actions violated "TILA, FERA, RICO and Federal UCC wire and mail fraud regulations."  Id.

In February and March 2008, defendants City of Miami Beach, Sklar, and representative agents realized that Westley and the tenants of the Property were doing business with African Americans, Haitians and Muslims on the premises and informed Westley that the Property could not be accessed and used because the $117,000 payment, described above, had not been paid to the City of Miami Beach.  Id., ¶ 11. Defendants Mann, Korus, Kalka, Sklar and the City of Miami Beach conspired for racially and religiously motivated reasons to deny Westley his First Amendment freedom of association rights to employ and conduct business on the Property with African Americans, Haitians and Muslims and thereby, violated "RICO, FILA, FERA, Federal Civil Right protections and UCC regulations."  Id.

The Property, for which the loan was personally guaranteed by Westley, included access and use of the eighth floor and rooftop of the building and sidewalk frontage on the Property. Id., ¶ 12. However, these sites were unjustly taken away and leased by defendants Sklar and the City of Miami Beach and their representative agents to third parties in violation of the Fifth Amendment. Id. Defendants Mann, Korus, Kalka, Sklar and the City of Miami Beach retaliated against Westley for providing information and ongoing cooperation to Federal Department of Justice officials and FBI agents regarding Miami Beach public corruption and illegal acts by local banks, real estate interests and law firms. Id.

From January 2008 through September 2010, defendants Thomas and Korus complained to defendants Sklar and the City of Miami Beach about Muslims, Haitians and African Americans accessing and using the Property. Id., ¶ 13. Defendants Sklar, City of Miami Beach, Thomas and their representative agents had joint business and financial arrangements in the adjoining City Center New World Symphony property. Id. Due to racial prejudice and religious bigotry, defendants Sklar, Korus, City of Miami Beach, Thomas and their representative agents wanted to remove the Muslims, Haitians and the African Americans from the Property as they were involved in Westley's special events and the tenants' broadcasting shows, and routinely worked on the premises, which directly competed with defendants Thomas, the City of Miami Beach and their representative agents for local events and venue bookings. Id. Due to racial bigotry and religious prejudice, defendants Sklar, the City of Miami Beach, Thomas and their representative agents believed and claimed that Westley's minority, African American, Haitian, and Muslim business associates devalued the surrounding City Center and New World Symphony property. Id.

Beginning in February 2008, Westley corresponded with defendants Mann, Korus, Kalka, Silver Hill Financial, Sklar and the City of Miami Beach requesting that the ADA access, life, safety and fire protection deficiencies for the Property be immediately brought into compliance with all federal OSHA standards, ADA access laws, Uniform Building Codes, and fire, life and safety regulations. Id., ¶ 14. These defendants were non-responsive to this correspondence "in violation of TILA, FERA, OSHA, ADA and UCC regulations and contractual, fiduciary and administrative professional obligations." Id. Mann informed Westley that he and defendant Korus were protected from local liability of the enforcement of federal laws and regulations because they were having sexual relations with Miami Dade County judges, court officers and government officials. Id. Korus further claimed to have special class protections against the enforcement of federal laws and regulations based on the protection provided by a local banking real estate syndicate and the co-campaign manager of the City of Miami Beach Mayor, Matti Bower. Id. In addition, defendants Mann, Korus, Kalka, Silver Hill Financial, Sklar and the City of Miami Beach refused to comply with the regulations to further prevent property access and association with Westley's African American, Haitian and Muslim business associates, thereby tortuously interfering with Westley's business interests and unjustly enriching themselves in violation of "Federal Civil Rights protections, TILA, FERA, OSHA, RICO, UCC and Federal Mail Wire fraud regulations." Id.

From May 2008 through September 2010, Westley and his related business interests made several workplace safety inquiries and life, safety and public health complaints. Id., ¶ 15. From July through September 2008, AFTEF and Westley paid

defendants Pukel[6] and Pathman[7] retainers through interstate commerce transactions and United States Postal Service mailings, in order to cure the federal UBC, OSHA and ADA deficiencies in the Property and to obtain acknowledgement of the $117,000 payment to City of Miami Senior Planner Johnson. Id. Defendants Pathman, Pukel, Sklar and the City of Miami Beach then conspired to obstruct ongoing federal law enforcement investigations by discouraging and preventing Westley and his related business interests from cooperating with Department of Justice ("DOJ") officials and FBI agents, and conspired to extort additional fees and further unjust enrichment payments from Westley and AFTEF. Id.

In October 2008, Westley and AFTEF, through defendant Pukel, commenced a legal action in Miami Dade Circuit Court before defendant Sigler to obtain compliance with federal OSHA workplace laws, ADA access requirements, fire, life and safety codes and public health regulations. Id., ¶ 16. Defendants Sigler, Sklar, Pathman and the City of Miami Beach caused Westley monetary harm by conspiring to: (1) intimidate and harass Westley's legal representation; (2) deny him access to public courts; (3) willfully prevent access to places of employment due to racial bigotry and religious prejudices; (4) endanger the life, safety and welfare of Westley and African American, Haitian and Muslim associates; (5) cause the breach of contracts and fiduciary responsibilities; and (6) obstruct justice by discouraging further cooperation with federal authorities and ongoing criminal investigations. Id.

---

[6]     Westley is seeking the entry of a default judgment against Pukel. See Docket No. 100. Apparently, Pukel is a lawyer.

[7]     Pathman is a lawyer and partner of the Miami law firm, Pathman Lewis, LLP. See Affidavit of Wayne M. Pathman ("Pathman Aff.") [Docket No. 87].

On November 4, 2008, defendants Sklar and the City of Miami Beach ordered local police, acting as "organized muscle" on their behalf and on the behalf of defendants Korus, Mann, Kalka and Silver Hill Financial, to forcibly break up an assembly at the Property in which Westley was participating and shut down the live broadcasts from the Property exposing governmental corruption, real estate banking fraud and local racism. Id., ¶ 17. Westley was physically removed from the property. Id. Based on these facts, defendants Sklar, City of Miami Beach, Mann, Korus, Pathman, and Sigler conspired to violate Westley's rights to freedom of speech, freedom of association and freedom of assembly, and their actions caused monetary damage to Westley. Id.

From March 2008 through September 2010, to mitigate damages and in the interests of the public welfare and life safety, Westley, AFTEF and tenants were forced to contribute over $400,000, including the money and time required to comply with the Uniform Building Code, ADA access requirements, OSHA standards and Certificates of Occupancy and Certificates of Use. Id., ¶ 18. Once Westley complied with these standards, defendants Sklar, City of Miami Beach, Korus, Ruiz, and Thomas issued building permits to third parties that authorized and resulted in the destruction of the improvements, which resulted in the illegal seizure of private property without just compensation in violation of his Fifth Amendment protections and in violation of "RICO statutes, ADA law and OSHA whistleblower protections." Id.

Defendants Korus, Ruiz[8] and their representative agents had armed guards placed on the Property preventing Westley from having access to the Property, forcing him to obtain a court order in June 2010, at a great expense to himself, in order to

---

[8]     Ruiz has not entered an appearance in this case.

regain access.  Id., ¶ 19.  Defendants Pukel, Ruiz, Sklar, Sigler, the City of Miami Beach, and their agents then conspired to deny further access to civil courts by Westley and his related business interests, causing him financial damage.  Id.

From January 2011 to the present, defendants Pukel, Ruiz, Sklar, Sigler, and the City of Miami Beach conspired to deny access to Westley, AFTEF and minority associates legal claims in local civil courts in order to obstruct justice and to cover up public corruption and their personal RICO liability exposure.  Id., ¶ 20.  Additionally, defendants Pukel, Ruiz, Sklar, Sigler, and the City of Miami Beach, and their representative agents, have repeatedly refused to return documents, records, plans and files requested from Westley by federal law enforcement authorities.  Id.  Further, defendants Ruiz, Sklar, Sigler, and the City of Miami Beach, and their representative agents, tortuously interfered in Westley's representation by attorney, George M. Tavares, by sabotaging Tavares's employment while in medical treatment.  Id.

Due to defendants' illegal acts, Westley was displaced from his place of employment and denied access to the Property.  This conduct violated "Civil Rights, OSHA, TILA, RICO, USERRA, and OSHA Federal law and regulation[s]."  Id.  Without access to the Property, weddings, broadcast shows and other fundraising events could not be held at the Property, resulting in monetary damages.  Id., ¶ 21.

As the result of Defendants Mann, Korus, Kalka, Silver Hill Financial, Sklar and the City of Miami Beach's misrepresentations regarding the existence of certificates of occupancy and use for the premises; their negligence and endangerment preventing safe access and use of the Property; and all defendants' racial bias and religiously discriminatory acts, Westley and his related business interests suffered financial loss and damage to reputation.  Id., ¶ 22.  In addition, "[d]efendants' conspiracy and

violations of Federal Civil Rights protections, OSHA, UBC fire[,] life [and] safety protections, ADA law, RICO statutes caused Plaintiff and related business interests financial loss and damage to reputations." Id.

Finally, Westley claimed that his personal wire information, financial and banking records provided to defendants Mann, Korus, Kalka, and Silver Hill Financial, were used for identity theft, false reporting, and credit fraud in violation of Federal Credit Reporting Act ("FCRA") and Federal Wire Fraud statutes. Id., ¶ 23.

Westley seeks monetary damages from all defendants. Id., Request for Relief.

This case comes before the Court on motions to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure by defendant Pathman.[9]

## II.    STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of jurisdiction over the person. See Fed. R. Civ. P. 12(b)(2). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. See K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591 (8th Cir. 2011) (citation omitted); see also Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 560 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). For the purposes of a prima facie showing, this Court must view the evidence in the light most favorable to the plaintiff. See Pecoraro, 340 F.3d at 561 (citing Digi-Tel Holdings, Inc., 89 F.3d at 522).

---

[9]    The Court recommended dismissal of the claims against Thomas, Sigler, the City of Miami Beach, Sklar and Kalka for lack of personal jurisdiction; and the claims against defendant Silver Hill Financial were dismissed on the basis of res judicata and because the claims asserted against it failed to state a claim for relief. See August 15, 2012 Report and Recommendation [Docket No. 107]. United States District Judge Joan N. Ericksen affirmed the Report and Recommendation. See September 14, 2012 Order [Docket No. 118].

In considering a motion to dismiss pursuant to Rule 12(b)(2), a court may consider materials outside of the pleadings.  See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998); see also K-V Pharm. Co., 648 F.3d at 592 ("Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion.") (citation and internal quotation marks omitted).  "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction."  Epps v. Stewart Inform. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted).

## III.    ANALYSIS

### A.    Personal Jurisdiction under Minnesota's Long-Arm Statute

In deciding whether personal jurisdiction exists in this suit, this Court must determine if the exercise of jurisdiction is appropriate under Minnesota's long-arm statute and whether the exercise of personal jurisdiction complies with the requirements of due process.  See Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citation omitted).  Minnesota's long-arm statute, in pertinent part, provides:

> a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:
>
> (1) owns, uses, or possesses any real or personal property situated in this state; or
>
> (2) transacts any business within the state; or

(3) commits any act in Minnesota causing injury or property damage; or

(4) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(i) Minnesota has no substantial interest in providing a forum; or

(ii) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

Minn. Stat. § 543.19, Subd. 1.

However, "because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied." MGR, Inc. v. Resolution Graphic Resources, Inc., No. Civ. 03-3247 (DWF/SRN), 2003 WL 22161585, at *2 (D. Minn. Sep. 15, 2003) (citing Wessels, Arnold & Handerson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995)); see also St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 591 (8th Cir. 2001) (citing same); AGinformationData, LLC v. Integrated Solutions Grp., Inc., NO. CIV. 11-3673 (DWF/JSM), 2012 WL 1517237, at *2 (D. Minn. April 30, 2012) (citing same). Due process requires that a defendant have the necessary "minimum contacts" with a forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). Contacts with the forum state must be "more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice." Pecoraro, 340 F.3d at 561. "These 'contacts' are sufficient when 'the defendant's

conduct and connection with the forum State are such that it should reasonably anticipate being hauled into court there,' and the 'reasonable anticipation' requirement is satisfied if the defendant has engaged in some act by which it purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Travel Tags, Inc. v. Digital Replay, Inc., No. Civ. 02-4276 (MJD/JGL), 2003 WL 22145272, at *3 (D. Minn. Sept. 15, 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985); World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)). "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." Pecoraro, 340 F.3d at 562.

The Eighth Circuit has developed the following test for analyzing whether sufficient minimum contacts exist for personal jurisdiction:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

K-V Pharm. Co., 648 F.3d at 592 (quoting Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010)). While the first three factors are of primary importance, and the last two factors are secondary, courts must look at look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists. Id. at 592-93; see also Minn. Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995) (citations omitted).

The third factor differentiates between specific and general jurisdiction. See Digi-Tel, 89 F.3d at 523 n.4; see also Wells Dairy, Inc. v. Food Movers Intern., Inc., 607 F.3d 515, 518 (8th Cir. 2010) ("Personal jurisdiction may be established by general

jurisdiction or specific jurisdiction, and the third factor-relation of the cause of action to the contacts-distinguishes between the two.") (citation omitted).

Specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." Johnson, 614 F.3d at 795 (citing Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)); see also Epps, 327 F.3d at 648 (citations omitted) ("When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction."). Conversely, "[g]eneral jurisdiction exists where the contacts between the defendant and the forum state are continuous and systematic even if there is no relationship between the contacts and the cause of action." Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2008) (quotation omitted); see also Johnson, 614 F.3d at 794 (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004)) ("A court obtains general jurisdiction 'against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.'").

The Court now applies these principles to the motion to dismiss for lack of personal jurisdiction by defendant Pathman.

### B.    Defendant Pathman's Motion to Dismiss

Defendant Pathman is an attorney licensed to practice law in Florida and is a partner at the law firm of Pathman Lewis, LLP. See Pathman Aff., ¶ 1. Pathman is a permanent resident of, and is domiciled in the Florida. Id., ¶ 3. Pathman has never

visited Minnesota nor does he own property in Minnesota.  Id., ¶¶ 4-5.  Pathman represented that he had no contact with the Minnesota at the time of the conduct alleged in the Complaint or at the time Westley filled his lawsuit in December 2011.  Id., ¶ 6.

In September of 2008, AFTEF retained Pathman Lewis as legal counsel to perform certain land use legal services for the Property located in Miami Beach Florida.  Id., ¶ 7.  The address of the retention letter was emailed to Westly@TheWomb.com and listed the following address:

> All for the Earth Foundation
> c/o Mr. John Westley, Executive Director
> 605 Lincoln Road, Suite 270
> Miami Beach, FL 33139

Id., Ex. A.  The retainer letter provided that the retention of Pathman Lewis was in connection to the "605 Lincoln Road Land Use Issue."  Id.  The services performed by Pathman Lewis occurred from August 2008 to October 2008.  Id., ¶ 7.  According to Pathman, the only communications with AFTEF that were sent through the U.S. Mail occurred by sending the letters to the address of the AFTEF property at the Miami Beach Florida address.  Id., ¶ 8.  Pathman represented that he personally never received a wire transfer from Westley.  Id., ¶ 9.  The only payment received from AFTEF was a $5,500 retainer check dated September 10, 2008 from its business services account with Bank One, N.A.  Id., ¶ 10, Ex. B.  The address identified for Bank One was Columbus, Ohio 43271.  Id., Ex. B.

According to Westley and Charles Ibanez (a previous director of AFTEF), AFTEF operates solely from Minnesota and all of the retainer payments and correspondence at issue were made to or from AFTEF and their accounts in Minnesota.  See Unsworn

Declaration of Charles Ibanez Pursuant to 28 U.S.C. Section 1746 [Docket No. 98], ¶¶ 2-3; Unsworn Declaration of John Westley Pursuant to 28 U.S.C. Section 1746 [Docket No. 97] ("Westley Decl."), ¶¶ 2, 3.

On these facts, Pathman argued that the first two elements of the personal jurisdiction analysis as to his contact with Minnesota favor strongly in a finding of no personal jurisdiction. <u>See</u> Defendant Wayne M. Pathman's Memorandum in Support of His Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 86], p 7. Specifically, Pathman asserted that he has never physically been in Minnesota and had no contact with Minnesota at the time of the alleged malfeasance or at the time the present suit was filed in December 2011. <u>Id.</u> While Pathman performed legal services through non-party Pathman Lewis for a non-party AFTEF, these services only pertained to the Property owned by AFTEF located in Miami Beach Florida. <u>Id.</u>, p. 8. Pathman noted that the services were only performed on behalf of AFTEF and not Westley. <u>Id.</u> Thus, according to Pathman, his contacts with Minnesota were non-existent. <u>Id.</u> As to the third factor, Pathman asserted that because he has had no contacts with Minnesota, he does not maintain the requisite continuous and systematic contacts with the state so as to afford general jurisdiction over him for the purposes of personal jurisdiction. <u>Id.</u>

With regard to specific jurisdiction, Pathman asserted that the only allegation against him pertains to conduct that occurred in Florida and that the Court cannot maintain jurisdiction on the basis that Westley, on the behalf of AFTEF, made a check payable to Pathman Lewis in Florida for legal services rendered in Florida concerning a Florida property. <u>Id.</u> Moreover, even if Pathman had individually received the check,

Pathman argued that such a contact would not be sufficient to establish personal jurisdiction. Id., p. 9.

As it relates to the fourth factor, Pathman claimed that the District of Minnesota has little interest in providing a forum for a series of events that relates to the Florida AFTEF property. Id., p. 10. Finally, Pathman argued that the fifth factor, concerning the convenience of the parties, also favors a finding of no personal jurisdiction because the defendants in this matter reside in Florida, the activities at issue occurred in Florida and any evidence related to Westley's claims would be located in Florida. Id.

In opposition, Westley spent the majority of his argument asserting what he claims were the illegal acts perpetrated by Pathman as follows: Pathman was retained by AFTEF to cure certain deficiencies for the Property and to obtain an acknowledgement of a payment to a City of Miami Beach Senior Planner. See Plaintiff Response Extension Motion & Showing to Defendant Wayne P. Pathman's Motion to Dismiss Complaint [Docket No. 96], pp. 1-2. Pathman then negligently sabotaged AFTEF and Westley's property claims and title claims for the property. Id. In order to cover up his mistakes and negligence, Pathman obstructed a law enforcement investigation and attempted to extort additional fees from Westley. Id., p. 2. Pathman, along with other defendants, harassed Westley's legal representation; denied him public access to the courts; prevented access to places of employment; endangered Westley's life; breached contracts and fiduciary responsibilities; and discouraged Westley from cooperating with federal authorities. Id., pp. 2-3. Westley also maintained that he was informed that Pathman worked for and represented the City of Miami Beach and that Pathman never informed him of this fact. Id., p. 3; Westley Decl., ¶ 8. Westley made additional arguments that Pathman, with the assistance of other defendants, violated his

18

First Amendment rights and that Pathman's employees had been arrested by the FBI in conjunction with various public corruption crimes. Id., pp. 3-4.

According to Westley, in 2009, Pathman Lewis served a complaint on AFTEF, as a Minnesota based non-profit corporation with its principal place of business in Ramsey County, Minnesota. Id., p. 4. Westley only included the first page of the Complaint. See Pl.'s Exhibit 1. The only defendant in that action was AFTEF. Id. The complaint was captioned in the Circuit Court of the 11th Judicial Circuit, in and for Miami Dade County, Florida. Id. Westley asserted that Pathman Lewis paid him a witness fee in the amount of $7.50 with regard to this 2009 action. See Pl.'s Mem., p. 4; Pl.'s Exhibit 3 (Pathman Lewis Operating Account showing Witness Fee). Westley also filed a motion for sanctions against Pathman Lewis in the Florida action. Id., p. 4; Westley Decl., ¶ 9. In this request for sanctions, Westley focused on the actions of Pathman Lewis related to the AFTEF Property located in Miami Beach, Florida, including: the purchase of the Property; the mortgage for the Property; the purchase of title insurance; leasing the Property to tenants; being told by the City of Miami Beach that the roof of the Property could not be used; and Westley's retention of Pathman Lewis with regard to the land use issues. See Pl.'s Exhibit 2 (John Westley Motion for Protective Order and Sanctions Against Plaintiff), ¶¶ 1-7. The motion for sanctions also asserted that Westley subsequently learned that Pathman Lewis represented the City of Miami Beach and that their collusion resulted in a lack of lease income to AFTEF, which in turn resulted in AFTEF being unable to pay its bill and legal fees, thereby forcing it into bankruptcy. Id., ¶¶ 14, 15. Westley complained of excessive discovery, that the Florida action was moot given that AFTEF had filed for bankruptcy, and requested that any

additional deposition testimony limited.  <u>Id.</u>, ¶¶ 17-21.  The motion was unsigned and undated.

In addition, Westley alleged that he being prevented access to documents in the Miami-Dade County public courts, billing records and case files, which Westley claims would assist him in defending against Pathman's motion to dismiss, as such documents would go to show systematic and continuous contacts with Minnesota, as well as direct contacts with Westley and Minnesota entities.  <u>See</u> Pl.'s Mem., p. 5.  In support of this assertion, Westley attached Exhibit 4 titled "Appellant John Westley Motion for Extension of Time to Obtain Case File and Records," which was captioned in the District Court of Appeal for the Third District for the State of Florida.  This request makes no mention of Pathman.  It does assert that Westley is banned from any access to the Miami-Dade County court and that previous attorneys, not including Pathman, have refused to provide him with requested documents, including court records, billing records and party case files.  <u>See</u> Pl.'s Exhibit 4, ¶¶ 3, 4.  Westley claimed that without the complete case files, billing records and documents, he cannot defend against the motion to dismiss and has asked that this Court issue an order giving him access to files and documents being held by the Miami Dade County Court and previous American Bar Association attorneys of record.  <u>See</u> Pl.'s Mem., pp. 5-6.

Pathman replied that Westley has not made any argument that this Court has specific jurisdiction and that none of the evidence presented by Westley supports a finding of general jurisdiction.  <u>See</u> Defendant Wayne M. Pathman's Reply Memorandum in Support of his Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction [Docket No. 99], p. 2.  With regard to the Miami Dade County action, Pathman noted that the plaintiff in that action was Pathman Lewis, and not Pathman,

and it related to a collection action brought due to AFTEF's failure to pay legal fees. Id.,
p. 3. In other words, because Pathman did not institute this legal action against a
Minnesota entity, he argued the AFTEF suit cannot provide a basis for personal
jurisdiction. Id. Moreover, Pathman asserted that a Florida law firm suing a Minnesota
non-profit in Florida for money owed pertaining to services that were performed
exclusively in Florida cannot constitute a basis for general jurisdiction. Id. As for the
motion for sanctions, Pathman argued that the act of a Minnesota plaintiff in a Florida
court does not provide a basis for jurisdiction. Id., p. 4. Further, Pathman contended
that the witness check does not provide a basis for jurisdiction because it was Pathman
Lewis that issued the check. Id. In addition, Pathman claimed that the Ibanez
declaration failed to provide any support for jurisdiction, and instead provided a
conclusory assertion that AFTEF through interstate commerce and electronic
communication and the United States Post Office, was retained by AFTEF to cure
defects on the Florida property. Id., pp. 4-5. Pathman also argued that while the
assertions by Westley that the retainer payment and correspondence were sent to and
from AFTEF and its accounts in Minnesota are false, even if true, such limited contacts
do not amount to systematic and continuous contacts so as to the Court afford
jurisdiction over his person. Id., pp. 5-6. Finally, Pathman asked this Court to deny
Westley's request for an extension to respond to the motion to dismiss on the basis that
Westley was not a party to the AFTEF suit in Florida, so nothing in the Court file could
provide a basis for jurisdiction in the present action. Id., p. 7. According to Pathman,
the Miami-Dade County court order allegedly precluding Westley from obtaining
documents from the court was related to a different matter involving Bayview Loan
Servicing, LLP, and only precluded him from filing any more pro se filings, but did not

preclude him from obtaining copies of court records and did not apply to the case between AFTEF and Pathman Lewis. Id. Pathman further noted that there is nothing in the record demonstrating that Westley was precluded from accessing court files or that he could not retain an attorney to represent him in order to obtain the necessary documents. Id.

In analyzing the five factors discussed in K-V Pharm. Co., the Court finds that Westley has not made a prima facie case for personal jurisdiction. First, Pathman has had no personal direct contact with Minnesota. He is a partner of a Florida Law firm that was retained by AFTEF, a Minnesota non-profit organization, to work on some land use issues involving the Florida Property. While Pathman Lewis sued AFTEF, there is no evidence in the record as to how service was effectuated on AFTEF and more importantly whether that Pathman was involved. Similarly, the witness fees to Westley came from the Pathman Lewis's operating account. This Court cannot aggregate the contacts of multiple entities, in this case non-party Pathman Lewis and defendant Pathman, much less ascribe the contacts of Pathman Lewis to Pathman, to establish jurisdiction over Pathman, as such jurisdictional requirements "must be met as to each defendant. . . ." Rush v. Savchuk, 444 U.S. 320, 331-32 (1980) ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum. The requirements of International Shoe, however, must be met as to each defendant over whom a state court exercises jurisdiction.") (emphasis added). In other words, while Pathman Lewis and Pathman may have joint liability as to their alleged malfeasance (albeit Pathman Lewis has not been named a defendant in this action) as to Westley, they are independent for jurisdictional purposes. Id. at 332; see also Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990) (concluding that while the district court had

personal jurisdiction over out-of-state law firm, it did not have jurisdiction over partner thereof, where the partner lacked sufficient contacts with the forum state).

Further, even assuming that the actions of Pathman Lewis could be attributed to Pathman for the purposes of personal jurisdiction, the Court still finds no substantial contacts with Minnesota. In <u>Austad Co. v. Pennie & Edmonds</u>, 823 F.2d 223 (8th Cir. 1987), a South Dakota business brought an action in South Dakota against a law firm with principal offices located in New York, alleging breach of fiduciary duty and professional negligence in connection with law firm's representation of South Dakota business during a Maryland patent litigation. <u>Id.</u> at 224-25. During the representation, the law firm sent an associate to South Dakota for three days to conduct a document review; there were numerous phone calls between New York and South Dakota; the use of courier services; monthly billings mailed to South Dakota; and checks paid by a South Dakota bank. <u>Id.</u> at 226. The Eighth Circuit concluded that based on these facts, the law firm did not have minimum contacts with South Dakota:

> While we do not dispute Austad's claim that an attorney-client relationship existed between Austad and Pennie & Edmonds, we do not believe that Pennie & Edmonds had sufficient contacts with South Dakota to confer personal jurisdiction. Pennie & Edmonds does not maintain an office in South Dakota nor do any of its attorneys reside there or maintain a license to practice law there. Pennie & Edmonds has never advertised or solicited business in South Dakota. Further, Pennie & Edmonds did not actively seek out Austad as a client. Rather, the representation of Austad by Pennie & Edmonds was arranged through Richard Goldstein, president of a New York corporation which was a regular client of the law firm. Finally, the actions giving rise to this lawsuit took place in Maryland, not in South Dakota. In short, Pennie & Edmonds' only "substantial connection" with South Dakota was its representation of a South Dakota corporation in connection with litigation taking place wholly outside South Dakota. Based on these facts, we do not believe a showing has been made that Pennie & Edmonds purposefully availed

itself of the benefits and protections of the laws of South Dakota. We therefore hold that Pennie & Edmonds did not have minimum contacts with South Dakota and thus was not subject to suit in South Dakota.

Austad Co., 823 F.2d at 226-27.

Here, the evidence is that Pathman and Pathman Lewis do not practice law in Minnesota. Both reside in Florida. The legal representation by Pathman Lewis dealt with a land use issue pertaining to the Florida Property resulting from actions taken by Florida residents and governmental entities. There is no evidence that Pathman or Pathman Lewis ever solicited business in Minnesota. Even assuming that payments, correspondence and communication between AFTEF and Pathman Lewis (via Pathman) occurred between Minnesota and Florida, these communications dealt with legal representation that occurred outside of Minnesota. See also Woodcock, 444 F.3d at 956 ("'Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.'") (quoting Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002)); see also Digi-Tel Holdings, Inc. v. Proteq Telecommunications, 89 F.3d 519, 523 (8th Cir. 1996) ("Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction."); Toro Co. v. Advanced Sensor Tech., No. 08–248 (DSD/SRN), 2008 WL 2564336, at *3 (D. Minn. June 25, 2008) (finding that even "relatively large" amounts of electronic communication, without more, does not establish jurisdiction). In addition, any retainer contract between AFTEF and a Florida law does not in of itself establish the requisite personal jurisdiction. K-V Pharm. Co., 648 F.3d at 593 (citing Burger King, 471 U.S. at 478-79) ("A contract between a plaintiff and an out-of-state defendant is not sufficient in

and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state.").

Moreover, the filing of the complaint in the Miami-Dade County Court by Pathman Lewis against AFTEF dealt with facts arising out of the Florida representation. The service of the Florida summons and complaint on AFTEF, even assuming that it occurred in Minnesota, and the provision of a witness fee to a Minnesota resident, all arise out of Florida and are exactly the type of "random," "fortuitous," and "attenuated" contacts that are insufficient to establish personal jurisdiction over Pathman.[10]  See Burger King, 471 U.S. at 475.

Consequently, neither the nature, quality nor quantity of contacts with Minnesota by Pathman, support a finding of personal jurisdiction over him in Minnesota.

As to the third factor, the Court finds that there is no specific jurisdiction over Pathman given there are no allegations that Westley's claims against him arise out of or are related to Minnesota.   See Johnson, 614 F.3d at 795.  All of the alleged actions against all defendants, including Pathman, arose in Florida, and the resulting harm is to or from the denial of the use of the Property located in Florida.  As previously stated, even assuming that the retainer was sent from Minnesota for Florida, such a payment from Minnesota does not amount to the necessary minimum contacts required for personal jurisdiction. Austad Co., 823 F.2d at 226-27.  Moreover, "[m]inimum contacts are 'defined by the defendant's contacts with the forum *state*, not by the defendant's contacts with *residents* of the forum.'"   Telex Communications, Inc. v. Sanomed

---

[10]     Westley's sanctions motion against Pathman Lewis in the Miami-Dade County action between Pathman Lewis and AFTEF has no bearing on Pathman's contacts with Minnesota. See Pl.'s Ex. 2.

Medizintechnik, GmbH, No. Civ. 02–298 ADM/AJB, 2002 WL 31398725, at *5 (D. Minn. Oct. 22, 2002) (citing West American Ins. Co. v. Westin, Inc., 337 N.W.2d 676, 679 (Minn. 1983), citing Hanson v. Denckla, 357 U.S. 235, 250-55 (1958)) (emphasis in original)); see also Mountaire Feeds, Inc. v. Argo Impex, S.A., 677 F.2d 651, 655 (8th Cir. 1982) (finding that defendant's contacts with the forum state are relevant for personal jurisdiction, not defendant's contacts with a resident).  In short, the fact that a retainer payment was sent by AFTEF from Minnesota to Florida only amounts to a contact by AFTEF with Pathman Lewis and not a contact by Pathman with Minnesota.

As for general jurisdiction, the Court notes, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . ."  Goodyear, 131 S. Ct. at 2853.  General jurisdiction could exist if Pathman could be "fairly regarded as at home" in Minnesota.  See Goodyear Dunlop Tires Operations, S.A., 131 S. Ct. 2846, 2853-54, 2855-57 (2011).  Here, there is no indication of continuous and systematic contacts given that Pathman has never travelled to Minnesota and is licenced to practice law in Florida.  The only connection with Minnesota is that Pathman's firm was retained by AFTEF, an organization that employed Westley, to conduct legal work in Florida and the law firm sued AFTEF in Florida for a failure to pay the fees arising out of that representation.  Such a limited connection arising out of a single transaction centered in Florida cannot form the basis of general jurisdiction over Pathman as to Minnesota.

As to the remaining factors bearing on jurisdiction, while in some circumstances, "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents," Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th Cir. 1995), Minnesota

has little interest in providing its citizens a forum for a dispute that has no connection to the state. Further, although witnesses reside in both Minnesota and Florida, where the events central to the case against Pathman arise out of the Florida Property, its use, and legal representation as to the Property, it would clearly be inconvenient to drag a Florida defendant and Florida witnesses to Minnesota. Thus, the fourth and fifth factors bearing on the determination of personal jurisdiction do not weigh in favor of jurisdiction in Minnesota.

Based on this Court's examination of the factors for jurisdiction and the totality of the circumstances, it finds that Pathman's motion to dismiss for a lack of personal jurisdiction should be granted and the Complaint against Pathman should be dismissed without prejudice.

## C. Westley's Request for an Extension to Conduct Discovery

The entire basis for Westley's motion for an extension to conduct discovery was that he was precluded "access to the Miami Dade County public courts, billing records and case files of Defendants [sic] Pathman's numerous, continuous, systematic, and direct contacts with the Plaintiff and entities in the State of Minnesota that satisfy this Court's specific and general due process jurisdiction within this forum." See Pl.'s Mem., p. 5. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1074 n. 1 (8th Cir. 2004) (marks and quotation omitted). The Court has already determined that Pathman's representation of AFTEF in Florida, along with ancillary contacts in Minnesota arising from this representation, cannot form the basis of jurisdiction over Pathman as to the present lawsuit filed by Westley. Westley has not described any additional contacts by Pathman

with himself or any other Minnesota entity that would warrant a finding of personal jurisdiction. At the hearing, Westley only stated that the records will show billing records and correspondence between Pathman in Florida and Westley in Minnesota. The Court is left to speculate how any of these purported records would be relevant to the issue of personal jurisdiction against Pathman. But even if these purported records showed additional communications by Pathman Lewis (via Pathman) with AFTEF (to Westley), as stated previously, these communications regarding legal representation in Florida (including billing records) cannot form the basis of personal jurisdiction in Minnesota. See Austad Co., 823 F.2d at 226-27. Westley's request for jurisdictional discovery must be "specifically targeted to flesh out connections already shown to exist," and not merely an attempt "to cast a wide net for potential contacts with the forum state." Greenbelt Res. Corp. v. Redwood Consultants, LLC, 627 F. Supp.2d 1018, 1028 (D. Minn. 2008). For all of these reasons, Westley's motion for an extension is denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendant Wayne M. Pathman's Motion to dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 84] be **GRANTED** and that the Complaint as to Pathman be dismissed **WITHOUT PREJUDICE**;

2.      Plaintiff's Response Extension Motion & Showing to Defendant Wayne P. Pathman's Motion to Dismiss Complaint [Docket No. 96] be **DENIED**.

Dated:      November 26, 2012

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 10, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 10, 2012**.